12311

DANA v. PEURIFOY, RECEIVER

(140 S. E., 247)

1. Action—Action Involving Question of Priority Between Landlord's Lien on Fixtures and Lien of Chattel Mortgagee Held Equitable in Nature.—Action involving only question of priority

as between landlord's lien on fixtures for rent and lien of chattel mortgagee *held* to involve only purely equitable issues.

2. APPEAL AND ERROR—ORDER TRANSFERRING CAUSE TO EQUITY SIDE OF COURT HELD NOT APPEALABLE, AND APPEAL THEREFROM DID NOT OPERATE AS SUPERSEDEAS PRECLUDING CONTINUANCE OF TRIAL.—Order transferring cause to equity side of Court and denying request that issues be framed for jury *held* not appealable, and hence appeal therefrom did not operate as a supersedeas precluding Court from proceeding with trial.

3. CHATTEL MORTGAGES—LANDLORD'S LIEN ON FIXTURES FOR RENT HELD SUPERIOR TO LIEN OF CHATTEL MORTGAGEE, THOUGH MORTGAGE ANTEDATED FORMAL LEASE.—Landlord's lien on fixtures for rent *held* superior to lien of chattel mortgagee, though formal lease was not executed until after execution of chattel mortgage, where lease contract and relation of landlord and tenant antedated the mortgage.

Before WILSON, J., Richland, Spring Term, 1927. Affirmed.

Action by Jane T. Dana against James E. Peurifoy, receiver of the American Bank & Trust Company. Decree for plaintiff, and defendant appeals.

The following is the decree of Judge Wilson:

"This action is brought for the purpose of determining the priority of the liens claimed by the plaintiff, Mrs. Dana, as landlord, for arrears of rent upon the proceeds of sale of the fixtures that were in her building at the time of the sale thereof, hereinafter mentioned, and of the defendant as receiver, claiming as mortgagee under mortgage of said fixtures made by Hendrix & Co., Inc., the tenant of said premises, and was heard by me in open Court at Columbia, on April 13, 1927.

"The cause had been docketed by defendants upon calendar 1, but a motion was made by the plaintiff's attorneys to have the cause transferred to calendar 2 for trial, upon the ground that the issues raised were equitable and properly triable by the Court, and at the same time a motion was made by defendants that, if the Court held the issue raised equitable and transferred the case to calendar

2, the Court should then frame certain issues to be submitted to a jury. Upon the hearing of these motions, I was satisfied that the issues raised were purely equitable and that the matter could be disposed of by the Court without framing issues, and I granted the motion to transfer the cause and refused to refer the issues. The whole question at issue was the priority of the liens claimed by the parties; the proceeds of the sale of the fixtures being held by a trustee under stipulation between the parties, subject to the determination of this issue by the Court.

"When the cause came on thereafter for trial, my attention was called to the fact that a notice of appeal had been served by the defendants from the order transferring the cause to calendar 2, and it was contended on behalf of defendants that such notice of appeal operated as a supersedeas, and that I should not therefore proceed with the trial of the cause; but, after hearing argument, I was convinced that, the issues raised in the pleadings being purely equitable, the order transferring to calendar 2 was not appealable, and did not operate as a supersedeas, and there was no sufficient ground for not proceeding with the trial.

"The following facts are admitted or established by the evidence adduced upon the trial:

"For some time previous to November, 1924, Hendrix's Inc., occupied as tenant of Mrs. Dana the premises, No. 1645 Main Street, Columbia, S. C., and owned the fixtures, from the sale of which the funds in controversy were derived. During all said time these fixtures remained in the storehouse owned by the plaintiff, Mrs. Dana. In the fall of 1924, Hendrix's, Inc., then the tenant of Mrs. Dana, went into bankruptcy, and the stock of fixtures was sold by the trustee in bankruptcy on November 28, 1924. The day before this sale, Mr. S. E. Hendrix and Mr. H. G. Brady secured from Mrs. Dana an option to

lease, for the benefit of a new corporation to be formed by them, the said premises, for a period of about two years, upon substantially the same terms as the former lease (said lease to commence from either December 1, 1924, or the occupation of said premises by the new corporation). This option was taken in the name of H. G. Brady, as agent, and the money paid for it was that of the parties for whose benefit it was secured. The option was in writing, and Mrs. Dana delivered a copy or ·duplicate of same to Mr. Edwin Belser to prepare the lease from, but all duplicates or copies thereof have been lost or destroyed. The material terms thereof, however, are shown by the testimony. After the adjudication in bankruptcy of Hendrix's, Inc., and prior to the sale, Mr. S. E. Hendrix and Mr. Brady had secured the assistance of Mr. DuPre and Mr. Pearce to furnish $1,500 to put into the new business to be formed by them, along with Mr. E. T. Hendrix, who put into the new concern the stock of goods in a business then being operated by him; and it was for the purpose of securing the building of Mrs. Dana to be used for the purposes of the new company so to be formed that the option was obtained prior to the bankruptcy sale.

"At the sale on November 28, 1924, the fixtures and stock of goods (formerly to Hendrix's, Inc.) were bid off by Mr. J. D. Perry, after notice given by Mr. Brady that he had secured an option for the lease of the premises. Thereafter, after notice had been served upon Mr. Perry to surrender the premises, an agreement was reached between Hendrix and Brady and Mr. Perry, whereby Hendrix and Brady, for the new company to be formed, bought from Mr. Perry the fixtures at the price of $7,000, paying him then on account of said purchase $3,500. This was on December 3, 1924, and Mr. Perry then delivered the fixtures to Mr. Brady and Mr. Hendrix. Under the terms of this purchase from Mr. Perry, he was to procure the con-

firmation of the sale by the referee in bankruptcy, whereupon the balance of the purchase price was to be paid; but in the meantime the purchasers were given possession of the fixtures, and, in the final settlement that was made between them, Mr. Perry paid Messrs. Hendrix and Brady, or the new corporation formed by them, the rental for the three days from December 1st to December 3d, the time he (Perry) had occupied the store before he delivered possession of the store and fixtures as above stated.

"The order of confirmation of sale was secured from the referee ·in bankruptcy on December 8th, and promptly thereafter Messrs. Hendrix and Brady took exclusive posesssion of the store and fixtures, and proceeded to secure the charter for the new company. The charter was issued by the secretary of state on December 11th, and was deposited for record in the office of the clerk of court for Richland County on the same day. At the time of the issuance of the charter, the company was in possession of the store and fixtures, and the relation of landlord and tenant with Mrs. Dana had begun.

"On the afternoon of December 11th, according to the testimony of defendant's witnesses, the new company executed the notes and mortgage to the American Bank & Trust Company, under which the defendant, Peurifoy, claims as receiver, but these papers were not handled by the bank until the 12th, when the net proceeds of such loan was passed to the credit of said corporation. The mortgage was recorded on December 17th.

"On the afternoon of December 3d, or morning of December 4th, directly after the fixtures had been purchased from Mr. Perry, Mr. Hendrix, for himself and associates, at once notified Mrs. Dana, through Mr. Dana, her agent, that they would exercise the option and lease the premises, and Mrs. Dana then notified her attorney, Mr. Edwin Belser, to prepare the lease to carry into effect the rental

contract. However, as the lease was to be made to the company then to be organized, the actual drafting of the lease was delayed until the charter could be obtained. The lease was drawn during December (the testimony does not disclose the exact date), and turned over by Mr. Belser to Mr. Dana to have the same executed. The lease bears date the      day of December, 1924, but was probated as to Hendrix & Co. on January 27, 1925, and as to Mrs. Dana January 31, 1925. I find that the same was delivered on or about the date of the probate, and was recorded February 6, 1925. The testimony clearly shows that the lease, as finally executed between Mrs. Dana and Hendrix & Co., simply carried out and consummated the parol agreement for the lease created by the previous option and its acceptance on the 3d or 4th of December, and under which the corporation during the period of its formation and from the moment of its final incorporation, took and held possession of the leased premises. Throughout the entire transaction Messrs. Hendrix and Brady acted for and on behalf of the nascent corporation, of which, upon completion of the incorporation, they became president and secretary and managing officers. The corporation accepted the benefits of their action in its behalf, and must be held to have ratified and be bound by it.

"There is really no serious conflict in the evidence as to the basic facts of the case, but such difficulty as there is arises from the conclusions to be drawn from the proven facts. The claim of the plaintiff, Mrs. Dana, is that her lien for rent, which was duly levied by distress prior to the bankruptcy or proceedings begun to enforce defendant's mortgage, is prior to that of the defendant, as receiver, because the mortgage lien was placed upon the property in question after the rent contract had been made, and after the actual relation of tenant and landlord had been assumed and rent paid therefor, while the defendant contends that

the contract for rent was not effective, so far as he was concerned, until the formal lease between the plaintiff and the corporation, Hendrix & Co., was executed. Under the evidence adduced, it cannot be contended that the lien of the mortgage could attach to the fixtures in question before they were brought upon the rented premises, and I do not understand that such position is taken by the defendant.

"From the evidence, I find as matter of fact that the mortgage lien under which defendant claims was not placed upon the said property before the rent contract was entered into, but, on the contrary, that the contract had been made and the actual relation of landlord and tenant had been assumed by the parties, and that the tenant was in possession of the premises under such relation at the time the mortgage was executed, and that the mortgagee knew of such relation, or that the fact of taking a mortgage of the fixtures under the circumstances was sufficient to put it on inquiry, which would have disclosed such relation. And this is so, whether we consider the relation as existing only from the instant that the charter was signed creating the corporation and giving it power to hold under the contract made for its benefit by the corporators who then became its officers, or whether we consider the relation as extending back to the time at which the fixtures were purchased and the notice to the plaintiff that the option would be complied with. In either event, the lease contract and relation of landlord and tenant antedated the mortgage. I find that the formal lease subsequently executed did not substantially differ from the previously existing parol agreement, which was thereby reduced to writing; and the circumstances that it was subsequently executed is not of material consequence. I further find that, for arrears of rent under her lease, Mrs. Dana duly issued her distress warrant against the said Hendrix & Co., and thereunder levied upon and held the said fixtures in the

leased premises until the same were sold pursuant to the stipulation in evidence in this cause.

"I think the facts of this case bring it clearly within the law of this State with regard to the rank of rent lien and chattel mortgage, as announced in *Morgan, S. P. Co. v. Bobo Under. Co.,* 107 S. C., 280; 92 S. E., 720, where it was held:

" 'Under Civ. Code, 1912 § 3516 [Section 5286, Code 1922], providing that, in cases where property distrained for arrears in rent is subject to the lien of a mortgage placed on the property before it was brought upon the rented premises, the mortgage debt shall have precedence of payment, and Section 3515 [Section 5285 Code 1922], extending the landlord's remedy of distress to mortgaged property of the tenant, where a mortgagor company was in possession of premises as tenants of the landlord when it mortgaged property on the premises, and so continued, so that the mortgage creditors took for security a lien on property at the time subject to arrears of rent, and so continuing, which the mortgage creditors knew, the mortgage claim as to the property covered by the mortgage had no preference over the rent claim.'

"In this case Judge Gage, delivering the opinion of the Court, reviews the history of the right of distress and the lien of the landlord in this State, and shows that the stringency of the old law, making all property found upon the demised premises liable for the rent, as was the law under the old act, has been gradually relaxed, and that the two acts under which, if at all, the question raised in that case and also in this might fall were the Acts of 1898, § 3515, mentioned above, and that of 1899, § 3516, above, and in construing them says, at page 283; 92 S. E., 721:

" 'The words of the statute in the Act of 1899, are, "rent contract entered upon," and in the Act of 1898, the words are "contract of tenancy entered into." But we think the

intent of the statute was, in effect, to except from the old remedy of distress property that was morgaged by the tenant before he assumed the actual relation of tenant to the landlord. Such a mortgage creditor is the exception to a general rule, and he must prove the exception.'

"And, taking up the facts of the case then decided, says:

" 'While there may have been by operation of law a technical new rent contract starting on January 1, 1914, yet the essential relationship of the parties was not changed; the Bobo Company was in as tenants of Hammond and Kirby when the mortgage was made, and so continued to the end; so that the mortgage creditors took for security a lien on property which was at the time they took the mortgage subject to arrears of rent, and so continued to the end; and the mortgage creditors knew it.'

"These principles I think control in the present case. Accordingly it is adjudged and decreed:

"(1) That the lien of the plaintiff, Mrs. Jane T. Dana, for the rent due and in arrears, was the first and prior lien upon the fixtures, and should be first paid from the funds arising from the sale thereof now in the hands of W. L. Bennett, as trustee.

"(2) That the said W. L. Bennett is hereby authorized and required to pay over to the plaintiff, or her attorneys, the sum of $513.19, the balance due upon said rent claim, as alleged in the complaint and shown by the evidence, together with interest thereon from the date of sale to date of such payment, and together with the amount of the costs of this action.

"(3) That any balance remaining of such proceeds be paid the defendant, receiver of the American Bank & Trust Company, on account of his said chattel mortgage."

*Messrs. D. W. Robinson* and *D. W. Robinson, Jr.,* for appellant, cite: *Rights of parties where new lease was entered into after the lien of the chattel mortgage attached*

*Sec. 5285, 5286, Code. Construed:* 107 S. C., 280. *Mortgage lien attached to the fixtures immediately on the vesting of title in Hendrix & Co.:* 129 S. C., 58–65. *A corporation must do some affirmative act to become liable on a contract made in its behalf by its promoters:* 14 C. J., 262; 17 A. L. R., 452; 49 A. L. R., 674. *Lease agreements not recorded within statutory period are void against chattel mortgagee:* Sec. 5270, Code. *Statute stricter than bailment statute:* 125 S. C., 332.

*Messrs. Melton & Belser,* and *Halcott P. Green,* for respondent, cite: *Failure to comply with Circuit Court Rule 28 by appellant in exceptions:* 98 S. C., 211. *Where the order from which notice of appeal is served is not appealable, the notice does not act as a supersedeas:* 76 S. C., 189. *Even ofter filing of return in Supreme Court on an appeal from a non-appealable order, the Circuit Court still has jurisdiction:* 109 S. C., 358. *Neither the order transferring the cause from Calendar 1 to Calendar 2, nor the refusing to direct issues for a jury are appealable:* 52 S. C., 461. *Decisive of questions involved at bar:* 107 S. C., 280. *Cases distinguished:* 123 S. C., 350 *Law of distress:* Secs. 5283, 5285, 5286, Code; 26 S. C., 331; 36 S. C., 75. *If property is purchased for a proposed corporation it will become liable upon the contract if, when organized, it takes the benefit of it:* 17 A. L. R., 489, 495.

November 9, 1927.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

The Court is entirely satisfied with the decree of his Honor Judge Wilson, and it is accordingly affirmed.

MR. CHIEF JUSTICE WATTS and MESSRS. JUSTICES STABLER and CARTER concur.

MR. JUSTICE BLEASE disqualified.