0851

A. LASSBERG & CO., Respondent v. ATLANTIC COTTON COMPANY, INC., Caracot Enterprises, Inc., H. D. Mahaffey, Sr., Individually, Moultrie Cotton Company, and Pecot, Ltd., of whom Pecot, Ltd. is Appellant.

(352 S. E. (2d) 501)

Court of Appeals

*Wendell G. Cantrell,* Spartanburg, *for appellant.*

*Robert A. Shelor, Jr.,* Spartanburg, *for respondent.*

Heard Nov. 10, 1986.

Decided Dec. 29, 1986.

CURETON, Judge:

In this action the parties stipulated before the trial court that the only issue before the court was that of "priority" between A. Lassberg & Co.'s (Lassberg) "perfected security interest"[1] and Pecot, Ltd.'s (Pecot) "possessory interest" in certain bales of cotton represented by negotiable warehouse receipts. Pecot appeals from an order holding that Lassberg's security interest prevailed over any claim Pecot had to the cotton. We reverse.

Harry D. Mahaffey, a cotton broker in Spartanburg, owns Caracot Enterprises, Inc. and Atlantic Cotton Company. For purposes of this appeal, the parties have stipulated that these three entities are the same and will be referred to collectively as Mahaffey. As a result of a business relationship, Mahaffey became indebted to Lassberg for over $400,000.00. The debt was secured by a security interest in Mahaffey's inventory. In the course of business, certain warehouse receipts were issued by a Spartanburg warehouse to Mahaffey and in turn negotiated by Mahaffey to Pecot, a Texas cotton firm. Lassberg claims its security interest attached to these warehouse receipts under provisions of the S. C. Uniform Commerical Code. Pecot claims that Mahaffey

---

[1] Although the appellant takes no exception to Lassberg characterizing its lien as perfected, Section 36-9-304(2), Code of Laws of South Carolina, 1976 provides the manner in which a security interest is perfected in a negotiable document. We find no evidence that this Code Section was complied with by Lassberg.

was at all times acting as its agent and had no proprietary interest in the warehouse receipts.

An action to determine the priority of liens is ordinarily an action in equity. *Dana v. Peurifoy*, 142 S. C. 46, 140 S. E. 247 (1972). In an equity action tried by the judge without a reference, we may find facts in accordance with our own view of the preponderance of the evidence. *Barden v. Barden*, 278 S. C. 672, 301 S. E. (2d) 141 (1983).

Both Mahaffey and Mike A. Burkholder (the owner of Pecot) testified to the business relationship and course of dealings between Mahaffey and Pecot. Their testimony essentially is that they had an oral arrangement whereby Mahaffey found buyers for cotton, then called Pecot who shipped the cotton to Aden Warehouse in Spartanburg. The buyer picked up the cotton from the warehouse and Mahaffey would invoice the buyer for the cotton. The buyer would then pay Mahaffey for the cotton it accepted. Mahaffey withheld his sales commission from the proceeds of sale, and remitted the remainder to Pecot. If a potential buyer refused a portion of a shipment, the warehouse issued a warehouse receipt for the rejected goods to Mahaffey who kept the receipt for several days to see if he could resell the cotton to another buyer. If unable to do so, Mahaffey sent the warehouse receipts to Pecot and that ended the transaction.[2]

The trial court found that Mahaffey had a proprietary interest in the warehouse receipts because it found that there had been a sale of the cotton by Pecot to Mahaffey. This finding is premised on the following facts: (1) buyers paid Mahaffey for the cotton, not Pecot, and Mahaffey in turn forwarded the net sales proceeds to Pecot; (2) prior to the transaction in question, Mahaffey sold twenty of Pecot's warehouse receipts to E. L. Hudson Cotton Company; (3) Mahaffey admitted in his answer that he returned the warehouse receipts representing rejected cotton to Pecot for credit to his account;[3] and (4) the act of Mahaffey holding

---

[2] Lassberg presented no testimonial evidence in support of its position as to the relationship of the parties. Requests for admissions referred to in the order which may relate to this issue are not in the record on appeal.

[3] This allegation was not an admission to an allegation in Lassberg's complaint.

the warehouse receipts from four to five days in an effort to find a buyer for the rejected goods shows he "exercised proprietary rights in the warehouse receipts."

Both parties stipulated at oral argument that the twenty warehouse receipts allegedly sold to E. L. Hudson did not represent cotton shipped by Pecot to Mahaffey and the alleged sale does not affect this case.

Under provisions of Section 36-9-204, Code of Laws of South Carolina, 1976, Lassberg's security interest would not attach to the warehouse receipts unless during the time the warehouse receipts were in Mahaffey's hands, he had "rights in the collateral."[4] Thus, the determinative question in this case is whether Mahaffey had an ownership interest or contract right in the warehouse receipts when he negotiated the receipts to Pecot. As we view the evidence, he did not.

Even though the fact that cotton buyers paid Mahaffey, not Pecot, for the cotton may give rise to an inference that Pecot shipped the cotton to Mahaffey as purchaser, who then resold the cotton to the buyers, such an inference dissipates in the face of the uncontradicted testimony of both Burkholder and Mahaffey that the cotton was never sold to Mahaffey and that Mahaffey simply served as Pecot's broker. Although Mahaffey alleges in his answer that he returned the warehouse receipts to Pecot for credit to his account,[5] he nonetheless testified at trial, and other evidence shows, that he had no account or credit arrangement with Pecot to purchase cotton for resale. Moreover, any admission by Mahaffey would not preclude Pecot from showing that it had no account with Mahaffey. Additionally, both Mahaffey and Burkholder testified that Pecot never gave Mahaffey permission to issue the warehouse receipts in his name.[6] Finally, we cannot agree with the trial judge that Mahaffey's possession of the receipts as Pecot's

---

[4] Rights, as used here, refer to ownership or contract rights in the collateral. *See, K.N.C. Wholesale, Inc. v. A WMCO, Inc.,* 56 Cal. App. (3d) 315, 128 Cal. Rptr. 345, 99 A.L.R. (3d) 473 (1976); *In re Bossingham,* 49 B. R. 345 (S. D. Iowa 1985) *aff'd,* 794 F. (2d) 681 (8th Cir. 1986).

[5] The record does not reflect whether the answer was verified or not.

[6] We frankly do not understand how the warehouse receipts were issued both to bearer and to Mahaffey individually. *See,* Section 36-7-202(2)(d), Code of Laws of South Carolina, 1976.

broker for a few days in an effort to find a buyer for the cotton is inconsistent with Pecot's ownership interest in the receipts.

Pecot also argues that there was no "due" negotiation of the warehouse receipts by Pecot to Mahaffey because Mahaffey gave Pecot no value for the receipts as required by Section 36-7-501(4), Code of Laws of South Carolina, 1976. We frankly do not understand this argument since there is no indication that the trial judge found that the receipts were negotiated by Pecot to Mahaffey. The trial judge found that there had been a sale of the cotton by Pecot to Mahaffey and that Mahaffey had the receipts issued to him as owner of the cotton. We find no merit to this argument.

Pecot's final argument is that to permit Lassberg's security interest to prevail over its interest would be unconscionable. Because unconscionability was not argued before the trial court, we will not listen to this argument now. *Talley v. South Carolina Higher Education Tuition Grants*, 289 S. C. 483, 347 S. E. (2d) 99 (1986).

Accordingly, the order of the trial judge is reversed.

BELL and GOOLSBY, JJ., concur.