500 S.E.2d 157

**John and Connie BARR, Appellants,**

**v.**

**CITY OF ROCK HILL and the Rock Hill Economic Development Corporation, Respondents.**

**No. 2829.**

Court of Appeals of South Carolina.

Heard April 7, 1998.
Decided April 20, 1998.
Rehearing Denied June 18, 1998.

Donald W. Tyler, of Tyler, Cassell & Jackson, Columbia, for appellants.

Terry B. Millar, and Keith A. Gatlin and Earl R. Gatlin, both of the Gatlin Law Firm, Rock Hill, for respondents.

GOOLSBY, Judge:

John and Connie Barr brought this action against the City of Rock Hill (the City) and the Rock Hill Economic Development Corporation (RHEDC) claiming negligence, breach of

implied warranty of workmanlike service, breach of implied warranty of habitability, breach of implied warranty of fitness for an intended use, fraud, and violation of the South Carolina Unfair Trade Practices Act arising out of the construction and sale of a house. Both the City and RHEDC moved for summary judgment primarily on the ground that the statute of limitations had expired. The trial court granted both motions. The Barrs appeal. We affirm.

## STANDARD OF REVIEW

In determining whether summary judgment is proper, the court must view all evidence in the light most favorable to the non-moving party to determine whether any genuine issue of material fact exists to necessitate trial of the case to a jury. *Cafe Assocs., Ltd. v. Gerngross,* 305 S.C. 6, 406 S.E.2d 162 (1991). More than a mere scintilla is required to overcome summary judgment. *Bravis v. Dunbar,* 316 S.C. 263, 449 S.E.2d 495 (Ct.App.1994). Thus, here we review the pleadings and materials submitted to the trial court in the light most favorable to the Barrs.

## FACTS

In February 1985, the Barrs purchased a home located at 440 Kimbrook Court in Rock Hill. RHEDC, the seller of the house, had purchased the Barrs' home and eight others on Kimbrook Court from the City. The City had acquired some houses by condemnation and had moved the houses to land it had acquired through an urban renewal project in the early 1970s. Upon completion of remodeling projects, the City transferred the remodeled homes to RHEDC. RHEDC then marketed and sold the homes through independent real estate agents.

In May 1987 and for three successive years thereafter ending in May 1990, annual termite inspections revealed excessive moisture under the Barrs' home. The inspectors suggested repairs, including adding vents, back-filling footers, and installing a polyethylene vapor barrier.

In January 1992, the Barrs sought refinancing; however, they were unable to obtain the required CL–100 letter from the termite inspection company because of excessive moisture

problems under the house. In March 1992, Mrs. Barr contacted the City and requested an inspection and report. The City's report noted several problems, including inadequate ventilation in the crawl space, which could be remedied by adding a polyethylene vapor barrier, standing water under the house, and inadequate back-filling of the crawl space.

After encountering difficulty in finding a contractor willing to complete repairs, the Barrs contacted Forensic Engineering, Inc. (Forensic) to obtain a structural inspection and report on their home. The Barrs received the structural engineering report in August 1992. The inspection revealed numerous problems with the house, including improper installation of floor joists and sills, improper support of floor sills, standing water under the house, no solid footing beneath a number of piers, and unacceptable moisture content of the supporting floor joist. The estimate to repair the house totalled $61,-090.61.

The Barrs filed suit against the City and RHEDC on March 17, 1994. Both the City and RHEDC raised the statute of limitations as a defense against all claims.

## DISCUSSION

The Barrs argue that the statute of limitations did not begin to run until they received Forensic's report in August 1992. Thus, they argue, their complaint filed in March 1994 was well within the limitations period.

The City and RHEDC argue, and the trial court held, that the statute of limitations began to run when the Barrs discovered, or should have discovered, the problems by the termite inspections reports beginning in 1987.

The applicable statute of limitations for all of the Barrs' claims except those arising under the South Carolina Tort Claims Act is found in section 15–3–530.[1] Under that section if a cause of action accrues before April 5, 1988, the limitations period is six years, and if it accrues after April 5, 1988, the period is three years. S.C.Code Ann. § 15–3–530 (Supp.1997).

---

1. The applicable statute of limitations for causes of action arising under the South Carolina Tort Claims Act is two years. S.C.Code Ann. § 15–78–110 (Supp.1997).

The Barrs argue on appeal that if the 1987 inspection report was sufficient to put them on notice and begin the running of the statute, then the period is six years. They are correct, and their time to file suit would have expired in May 1993. The Barrs are also correct that if the four inspection reports are considered cumulatively to put them on notice of the defects, the statute of limitations would have been three years and would have expired also in May 1993. In either case, however, if the Barrs received notice of the defects from the termite inspections, the statute of limitations expired eleven months before the Barrs filed suit.

■ The Barrs argue on appeal that the City's delay and assurances in 1992 led them to reasonably believe and conclude the defects would be repaired and the City should be estopped to raise the statute of limitations defense. This issue is not properly preserved, however, because the Barrs raise it for the first time on appeal. *See Jackson v. Speed*, 326 S.C. 289, 486 S.E.2d 750 (1997) (refusing to apply the plain error rule); *A. Lassberg & Co. v. Atlantic Cotton Co.*, 291 S.C. 161, 165, 352 S.E.2d 501, 503 (Ct.App.1986) (stating "[b]ecause unconscionability was not argued before the trial court, we will not listen to this argument now").[2]

Thus, the dispositive question is whether the inspection reports provided notice of the defects to the Barrs.

Generally, a cause of action accrues under South Carolina law "the moment the defendant breaches a duty owed to the plaintiff." *Grooms v. Medical Soc'y of S.C.*, 298 S.C. 399, 402, 380 S.E.2d 855, 857 (Ct.App.1989). The "discovery rule" provides an exception to the general rule and tolls the statute of limitations until a "person kn[ows] or by the exercise of reasonable diligence should ... know[ ] that he ha[s] a cause of action." S.C.Code Ann. § 15-3-535 (Supp.1997). The statute starts to run upon discovery of " 'such facts, as would have led to the knowledge thereof, if pursued with reasonable

---

2. The Barrs argue that *Dillon County Sch. Dist. v. Lewis Sheet Metal Works, Inc.*, 286 S.C. 207, 332 S.E.2d 555 (Ct.App.1985), stands for the proposition that estoppel raises a question of fact that would preclude summary judgment. In *Dillon*, however, the trial court had actually ruled on the estoppel issue. Here, estoppel was neither raised by the Barrs nor ruled upon by the trial court.

diligence.' " *Burgess v. American Cancer Soc'y,* 300 S.C. 182, 185, 386 S.E.2d 798, 800 (Ct.App.1989) (quoting *Grayson v. Fidelity Life Ins. Co. of Philadelphia,* 114 S.C. 130, 135, 103 S.E. 477, 478 (1920)).

A party has constructive notice if the party knows of " 'facts and circumstances of an injury [that] would put a person of common knowledge and experience on notice that some right ... has been invaded or that some claim against another party *might exist.' " Graniteville Co. v. IH Servs., Inc.,* 316 S.C. 146, 148, 447 S.E.2d 226, 228 (Ct.App.1994) (emphasis added) (quoting *Snell v. Columbia Gun Exchange, Inc.,* 276 S.C. 301, 303, 278 S.E.2d 333, 334 (1981)). Failure of the injured party to comprehend the full extent of damages, however, is immaterial. *Dean v. Ruscon Corp.,* 321 S.C. 360, 468 S.E.2d 645 (1996); *Dillon County Sch. Dist. v. Lewis Sheet Metal Works, Inc.,* 286 S.C. 207, 332 S.E.2d 555 (Ct.App. 1985). "The date on which discovery should have been made is an objective, not subjective, question." *Kreutner v. David,* 320 S.C. 283, 285–86, 465 S.E.2d 88, 90 (1995).

The trial court correctly ruled that the termite inspection reports "advised [the Barrs] of water and other problems under their house, including ... the following: standing water, evidence of old decay damage, the need for more ventilation, the need to patch around water and drain lines, and the need to back fill the 'footers.' " The Barrs failed to correct the problems or investigate further to determine the extent of the problems. Mrs. Barr admitted that she was aware of the problems that needed repair but characterized the problems as "nothing of great concern." She stated that she "first realized the magnitude of the problem when [she] received [Forensic's] report" in August 1992.

Forensic's report was obtained because the termite inspection company refused to issue a termite letter for refinancing of the house. The refusal arose out of the four termite inspection reports in which the company had informed the Barrs of problems under their house that needed repair. Many of the problems listed in both Forensic's and the City's reports were also listed in the termite inspection reports.

If the Barrs had exercised reasonable diligence and investigated the problems noted in the termite inspection reports,

they could have realized the magnitude of the problem and brought suit before the statute of limitations ran. They failed to act, however, and let the statute of limitations expire on any claim against the City or RHEDC.[3]

**AFFIRMED.**

CURETON and STILWELL, JJ., concur.

---

**3.** Because we affirm on this ground, we need not address the Barrs' remaining arguments on the trial court's alternate grounds for granting summary judgment.