534 S.E.2d 1

Cornelius JOUBERT, Appellant,

v.

**SOUTH CAROLINA DEPARTMENT OF SOCIAL SERVICES**
and McCormick County Department of Social Services,
Respondents.

The Pines of McCormick, Inc., Appellant,

v.

South Carolina Department of Social Services and McCormick
County Department of Social Services, Respondents.

No. 3181.

Court of Appeals of South Carolina.

Heard May 8, 2000.

Decided June 5, 2000.

Rehearing Denied Sept. 2, 2000.

178

Fletcher C. Mann, Sr., of Leatherwood, Walker, Todd & Mann, of Greenville, for Appellant.

Stephen D. Baggett and Robert W. Cone, both of Burns, McDonald Bradford, Patrick & Tinsley, of Greenwood, for Respondents.

ANDERSON, Judge:

The trial court granted summary judgment to defendants South Carolina Department of Social Services and McCormick County Department of Social Services (collectively "DSS") under the statute of limitations provision of the state Tort Claims Act. Plaintiffs Cornelius Joubert and The Pines of McCormick, Inc. appeal. We affirm.

## FACTS/PROCEDURAL BACKGROUND

DSS issued a group foster care license to Cornelius Joubert, the Director of The Pines, a residential treatment facility for emotionally disturbed teenaged girls in McCormick. Legal custody of the teenagers remained with DSS, but Joubert, his wife Genevieve, and The Pines staff supervised them twenty-four hours a day. On December 28, 1993, DSS transferred Edwina Daniels, a deeply-troubled seventeen-year-old, from a "maximum security" foster care facility to the less-restrictive facility run by Joubert. In addition to anti-social behavior and "attitude" problems, Daniels had a long history of running away from various placements.

On January 30, 1994, slightly more than a month after her arrival, Daniels ran away from The Pines for an eight-day period. Joubert permitted her conditional return with the understanding she would not be readmitted if she fled the facility again. A few days later, Daniels threatened a fellow resident with a pair of scissors and proclaimed her intent to burn The Pines down. On February 14, one week after returning to the facility, Daniels again left The Pines without permission. She surfaced two days later in the custody of the local sheriff's department.

Joubert informed DSS on February 16 that Daniels had returned from this unauthorized absence, but she would not be readmitted to The Pines out of concern for the other girls' safety. Because her foster-care worker was in the midst of changing jobs, DSS pleaded with Joubert to keep Edwina until the following morning. Although the substance of the parties' eventual agreement remains in controversy, it is undisputed Joubert's son drove Daniels and another seventeen-year-old runaway to a local motel, where they remained overnight without adult supervision. The following day, they were returned to The Pines to collect their belongings and turned over to a DSS caseworker.

DSS received a report on March 18, which alleged neglect and lack of supervision against Joubert stemming from this incident. During the subsequent DSS investigation, Joubert admitted leaving the juveniles at the motel and stated he saw nothing wrong in doing so. On April 29, DSS found the case "indicated" for neglect and lack of supervision. DSS advised

Joubert of its decision on May 18, and on May 24, Joubert requested a "fair hearing."

By letter dated June 15, a DSS appeals examiner notified Joubert that a fair hearing had been scheduled for July 20, 1994 at 10:00 am. Joubert appeared on the appointed day, but he was advised the hearing had been continued. Thereafter, on August 10, Joubert received a subpoena to appear for the re-scheduled hearing at 10:00 am on August 31.

In the interim, on June 21, 1994, DSS informed Joubert by letter it was denying his application for renewal of his license to operate a residential group care facility. This decision, issued without notice or an opportunity to be heard, violated S.C.Code Ann. § 20-7-2260 (1985 & Supp.1999) ("The Department [of Social Services] may revoke the license of any child welfare agency which fails to maintain the proper standards of care and service to children in its charge or which violates any provision of this subarticle. No license shall be revoked or its renewal refused except upon thirty days' written notice thereof. Upon appeal from such revocation or refusal to renew a license, the Department shall, after thirty days' written notice thereof, hold a hearing, at which time the agency shall be given an opportunity to present testimony and confront witnesses.").

A DSS appeals examiner held an institutional abuse hearing as scheduled on August 31, concerning the indicated report and subsequent entry of Joubert's name in the DSS Central Registry of Child Abuse and Neglect. At the hearing, Joubert appeared with his attorney and, in addition to objecting to the "indicated" finding of abuse by DSS, objected to "the refusal of this [Department] to renew the license as of April the 1st, 1994." DSS counsel responded: "The issues or anything about the revocation of a license, is not before this hearing examiner today. The only, this is pursuant to the Joubert's appeal of their indicated case of, excuse me, Mr. Joubert's appeal, of this indicated case of neglect and lack of supervision."

On September 6, 1994, Joubert's attorney wrote the Director of DSS, Samuel Griswold, outlining the procedural problems experienced by Joubert in obtaining a hearing and reiterating Joubert's intent to appeal the non-renewal of his

operating license. Leo Richardson, DSS Director of Individual and Provider Rights, answered by letter dated September 23, which stated: "I have noted that all of the objections and concerns you raised were also part of the [hearing] record. Therefore, all of your concerns will be directly addressed in the fair hearing decision." The same day, however, the appeals examiner from the August 31 hearing replied with a separate letter: "Your letter dated September 6, 1994 has been considered as the written request for a fair hearing involving the denial of relicensure for the Pines of McCormick. As you have thirty (30) days from June 21, 1994 (the date you were informed that the Pines of McCormick was denied relicensure) to file an appeal request, I must deny this request." Joubert's attorney, responded to Richardson and the hearing examiner with another letter to Griswold stating that he had advised Joubert to "seek legal redress in another appropriate forum."

On December 19, 1994, a DSS Child Protective Services Committee issued a final administrative decision upholding both the "indicated" report of abuse and Joubert's inclusion on the Central Registry for neglect and lack of supervision of Edwina on February 16. The decision made no mention of the relicensing issue.

Pursuant to S.C.Code Ann. § 20–7–655(F) & (G) (Supp. 1999), on January 17, 1995, Joubert petitioned the family court for judicial review of the administrative decision and the denial of The Pines' relicensing application. On September 22, 1995, the family court reversed all prior DSS decisions and ordered the agency to expunge Joubert's name and all identifying information from the Central Registry of Child Abuse and Neglect. DSS did not appeal the court's decision, but responded with a letter, dated October 12, 1995, stating it had removed Joubert's name and identifying information from the Central Registry and was endeavoring to comply with the family court's order regarding reinstatement of The Pines' license to operate.

On February 14, 1997, Joubert and The Pines filed separate tort actions against DSS alleging gross negligence and intentional failure to renew The Pines' operational license or afford a "fair hearing" on the matter. Joubert's complaint also

asserted a claim for damages arising from the period of time his name appeared on the Central Registry of Child Abuse and Neglect. DSS filed identical motions for summary judgment on February 11, 1998. On January 20, 1999, the circuit court held a hearing on the motions. By orders dated February 10, 1999, the court granted summary judgment on both motions based upon the expiration of the applicable statute of limitations. This appeal followed.

## ISSUES

I. Does S.C.Code Ann. § 15–78–70(b) render inapplicable the statute of limitations found in § 15–78–110?

II. Did the trial court err in granting summary judgment because the action was brought within two years of the Family Court's order?

III. Did Appellant make a "verified claim" as required by S.C.Code Ann. § 15–78–80, thus extending the statute of limitations to three years instead of two?

IV. Did the failure to grant a pre-deprivation hearing deprive Appellants of Due Process?

V. Did Respondent fail to comply with the terms of the family court order, thus creating an additional claim not barred by the statute of limitations?

## STANDARD OF REVIEW

Summary judgment is appropriate when it is clear there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Vermeer Carolina's, Inc. v. Wood/Chuck Chipper Corp.*, 336 S.C. 53, 518 S.E.2d 301 (Ct.App.1999); *Baird v. Charleston County*, 333 S.C. 519, 511 S.E.2d 69 (1999); *Young v. South Carolina Dep't of Corrections*, 333 S.C. 714, 511 S.E.2d 413 (Ct.App.1999); Rule 56(c), SCRCP; *see also Wells v. City of Lynchburg*, 331 S.C. 296, 501 S.E.2d 746 (Ct.App.1998) (trial court should grant motion for summary judgment when pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact and moving party is entitled to judgment as matter of law). In determining whether any triable issue of fact exists

such as to preclude summary judgment, the evidence and all inferences reasonably drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Strother v. Lexington County Recreation Comm'n,* 332 S.C. 54, 504 S.E.2d 117 (1998); *Pye v. Aycock,* 325 S.C. 426, 480 S.E.2d 455 (Ct.App.1997). If triable issues exist, those issues must go to the jury. *Rothrock v. Copeland,* 305 S.C. 402, 409 S.E.2d 366 (1991).

## *LAW/ANALYSIS*

### I. Application of § 15–78–70(b)

■ Joubert and The Pines argue the trial court erred in granting summary judgment to DSS because S.C.Code Ann. § 15–78–70(b) (Supp.1999) renders the statutory limitations period set by the Tort Claims Act inapplicable. We disagree.

This contention, neither raised to nor ruled upon by the trial court, is not preserved for our review. *See Wilder Corp. v. Wilke,* 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) ("It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review."); *Creech v. South Carolina Wildlife and Marine Resources Dep't,* 328 S.C. 24, 491 S.E.2d 571 (1997) (an issue not raised to the trial court is not properly before the appellate court); *Pike v. South Carolina Dep't of Transp.,* 332 S.C. 605, 506 S.E.2d 516 (Ct.App.1998) (to preserve an issue for appeal a party must raise it to the trial court and obtain a ruling).

■ Even if preserved, however, the argument lacks merit. Section 15–78–70(b) states:

Nothing in this chapter may be construed to give an employee of a governmental entity immunity from suit and liability if it is proved that the employee's conduct was not within the scope of his official duties or that it constituted actual fraud, actual malice, intent to harm, or a crime involving moral turpitude.

S.C.Code Ann. § 15–78–70(b) (Supp.1999). By its own terms, the subsection applies only to *employees* of a government agency. Because neither action in the case at bar names any individual defendants, § 15–78–70(b) simply cannot apply.

Furthermore, this statutory provision lifts the immunity normally enjoyed by governmental employees if they act outside the scope of their employment or their actions constitute fraud, malice, an intent to harm, or a crime of moral turpitude. Absolutely nothing in subsection (b) references a limitations period and, as part of the general Tort Claims Act statutory scheme, it is subject to the Act's statute of limitations as prescribed in S.C.Code Ann. § 15–78–110 (Supp.1999) ("Except as provided for in Section 15-3-40, *any action brought pursuant to this chapter is forever barred unless* an action is *commenced within* [the applicable limitations period]").

## II. Application of § 15–78–110

■ Joubert and The Pines assert, even if S.C.Code Ann. § 15–78–110 applies, summary judgment was inappropriate because 1) they filed a verified claim, which operated to extend the statutory limitations period to three years, and 2)the limitations period did not begin to run until September 20, 1995, when the family court filed its order reversing the DSS Child Protective Services Committee. We disagree.

■ Without question, DSS is a "governmental entity" as defined by the Tort Claims Act in S.C.Code Ann. § 15–78–30(d) (Supp.1999). The Act, which governs all tort claims against governmental entities, *see, e.g., Pollard v. County of Florence,* 314 S.C. 397, 444 S.E.2d 534 (Ct.App.1994); *Searcy v. Dep't of Educ. Transp. Div.,* 303 S.C. 544, 402 S.E.2d 486 (Ct.App.1991), provides a strict statute of limitations period:

> Except as provided for in Section 15–3–40,[1] any action brought pursuant to this chapter is forever barred unless an action is commenced within two years after the date the loss was or should have been discovered; provided, that if the claimant first filed a claim pursuant to this chapter then the action for damages based upon the same occurrence is forever barred unless the action is commenced within three years of the date the loss was or should have been discovered.

---

1. This section authorizes an exception to the statute of limitations if the person entitled to bring the action is under legal disability at the time the cause of action accrued. *See* S.C.Code Ann. § 15–3–40 (1977 & Supp.1999).

S.C.Code Ann. § 15–78–110 (Supp.1999). The Tort Claims Act contains a general two-year statute of limitations; however, if a plaintiff files a statutorily-defined claim within one year of the loss or injury, the statute of limitations is extended to three years. *See id.;* S.C.Code Ann. § 15–78–80 (Supp.1999); *see also* S.C.Code Ann. § 15–78–100(a) (Supp.1999) ("Except as provided for in Section 15–3–40, an action for damages under this chapter may be instituted at any time within two years after the loss was or should have been discovered. Provided, that if a claim for damages was filed and disallowed or rejected an action for damages filed under this chapter, based upon the same occurrence as the claim, may be instituted within three years after the loss was or should have been discovered.").

## A. Verified Claim

█ Joubert and The Pines maintain, pursuant to S.C.Code Ann. § 15–78–110, they had three years from March 24, 1994, in which to file the underlying complaints because they submitted a "verified claim" on January 17, 1995. We disagree.

█ There are two ways to assert damages against a state agency under our Tort Claims Act: 1) the filing of a "verified claim" pursuant to § 15–78–80(a); or 2) the institution of an action against the appropriate agency as happened here. *See* S.C.Code Ann. §§ 15–78–80(a) & 15–78–90(b) (Supp.1999). The Act defines a claim as "any written demand against the State of South Carolina or a political subdivision for money only, on account of loss, caused by the tort of any employee of the State or a political subdivision while acting within the scope of his official duty." S.C.Code Ann. § 15–78–30(b) (Supp.1999).

As the Court of Appeals noted in *Searcy,* § 15–78–80 expressly requires the person to file a verified claim in order to benefit from the three-year limitations period: A twofold purpose is served by a requirement of this kind. First, the governmental entity is put on notice so that it can both conduct an investigation while the facts are fresh and preserve the evidence. *Cochran v. City of Sumter,* 242 S.C. 382, 131 S.E.2d 153 (1963), overruled on other grounds, *McCall v. Batson,* 285 S.C. 243, 329 S.E.2d 741 (1985).

Second, a verification serves to discourage the filing of false claims because a verification permits a prosecution for perjury if the claim is fraudulent.

*Searcy*, 303 S.C. at 546, 402 S.E.2d at 487.

*Pollard v. County of Florence*, 314 S.C. 397, 400, 444 S.E.2d 534, 536 (Ct.App.1994). In particular, the verified claim procedure outlined in the statute adds a year on to the regular limitations period to encourage claimants to file with the offending agency before bringing a lawsuit. *Id.*

In order to trigger the three-year statute of limitations under § 15–78–110, a party must follow the procedure outlined in S.C.Code Ann. § 15–78–80:

(a) A verified claim for damages under this chapter, setting forth the circumstances which brought about the loss, the extent of the loss, the time and place the loss occurred, the names of all persons involved if known, and the amount of the loss sustained may be filed:

(1) in cases against the State, with the State Budget and Control Board, or with the agency employing an employee whose alleged act or omission gave rise to the claim;

. . . .

(b) Each agency and political subdivision must designate an employee or office to accept the filing of the claims.

(c) Filing may be accomplished by receipt of certified mailing of the claims or by compliance with the provisions of law relating to service of process.

(d) The verified claim may be received by the Budget and Control Board or the appropriate agency or political subdivision. If filed, the claim must be received within one year after the loss was or should have been discovered.

(e) In all cases in which a claim is filed, the Budget and Control Board or political subdivision has one hundred eighty days from the date of filing of the claim in which to determine whether the claim should be allowed or disallowed. Failure to notify the claimant of action upon the claim within one hundred eighty days from the date of filing of the claim is considered a disallowance of the claim.

(f) The handling and disposition of claims filed under this chapter are not subject to the provisions of Article 3, Chapter 23 of Title 1.

(g) In all cases, where insurance is provided by the Budget and Control Board, the agency or political subdivision involved must cooperate with the Budget and Control Board in the investigation and handling of any claim.

S.C.Code Ann. § 15–78–80 (Supp.1999); *see Searcy,* 303 S.C. at 547, 402 S.E.2d at 488 (the "claim" mentioned throughout the Tort Claims Act can only refer to the "verified claim" described in § 15–78–80).

Joubert and The Pines aver these statutory requirements were met by: 1) Joubert's testimony before the DSS appeals examiner; 2) the oral "reservation of rights" made by their attorney at the hearing; 3) their answers to interrogatories from DSS; 4) Joubert's deposition testimony; and 5) the filing of the petition for review in the family court. None of the above actions by the plaintiffs constitute a claim as defined by the Act.

█ The oral testimony and "reservation of rights" are not verified claims brought under the Tort Claims Act. They are also not written claims which are capable of being filed with the appropriate agencies. In the "reservation of rights," counsel for Joubert and The Pines stated:

We object to the revocation of the license, and we object to the refusal of this agency to renew the license as of April 1, 1994. As such, we reserve our rights specifically to pursue this matter in another court, in another jurisdiction at another time, as well as our rights to proceed against the individuals involved in the decision making process of this institution. With that, we're here for the protection of our rights pursuant to this subpoena, which has been issued.

The reservation makes no statement regarding "the extent of the loss, the time and place the loss occurred, the names of all persons involved if known, and the amount of the loss sustained" as required by S.C.Code Ann. § 15–78–80. It therefore fails to qualify as a verified claim.

█ The interrogatory answers and family court petition are not demands for money damages. *See* S.C.Code Ann.

§§ 15–78–30(b) & 15–78–80 (Supp.1999); *Vines v. Self Mem'l Hosp.*, 314 S.C. 305, 443 S.E.2d 909, 910 (1994) (the verified claim must set forth the extent and amount of the loss sustained); *Rink v. Richland Mem'l Hosp.*, 310 S.C. 193, 422 S.E.2d 747 (1992) (plaintiff's letter to hospital did not comply with statutory requirements, including the amount of the loss sustained). They do not satisfy the requirement of being a claim brought under the Tort Claims Act. The petition to family court was an appeal brought under S.C.Code Ann. § 20–7–655(F) & (G) (Supp.1999), and not a claim brought under Chapter 78 of Title 15 as necessary to be a verified claim under § 15–78–80.

The appeal in family court did not involve the claims by The Pines arising from DSS denying the license renewal. There is a required bifurcation of the claim by Joubert to have his name removed from the registry and the claims by The Pines for the denial of their license renewal. The Pines' claim is brought under S.C.Code Ann. §§ 20–7–2660 and 1–23–380, which require the appeal to be before the Administrative Law Judge Division and not the family court. Therefore, the claims by The Pines could not be protected from the statute of limitations by the filing of a claim in family court.

Most importantly, our courts have repeatedly held strict compliance with the verified claim statute is mandatory. *See, e.g., Vines*, 314 S.C. at 307, 443 S.E.2d at 910 ("A claim against a state entity under the Tort Claims Act must be verified to entitle a plaintiff to the three-year statute of limitations. Substantial compliance is not sufficient."); *Rink*, 310 S.C. at 196–197, 422 S.E.2d at 748–749 ("[W]hen a plaintiff seeks to sue a political subdivision he 'must fully comply with the prescribed terms and conditions of the statute, and the filing of a claim as required is an essential prerequisite to a right of action.' ") (quoting *Cochran v. City of Sumter*, 242 S.C. 382, 386, 131 S.E.2d 153, 155 (1963), *overruled on other grounds by McCall v. Batson*, 285 S.C. 243, 329 S.E.2d 741 (1985)); *Pollard*, 314 S.C. at 400, 444 S.E.2d at 536 (substantial compliance with the statute is not enough; the "verified claim" procedure must be strictly complied with in order to trigger the three-year limitations period). Accordingly, because Joubert and The Pines did not comply fully with the statutory

mandate, no verified claim was filed, and the statute of limitations on the underlying actions was two years, not three.

## B. Date the Cause of Action Arose

 It is undisputed the underlying complaints in this case were filed on February 14, 1997. Therefore, pursuant to § 15–78–110, the "loss" to Joubert and The Pines must have occurred or been discovered no earlier than February 14, 1995. *See id.; Young v. South Carolina Dep't of Corrections*, 333 S.C. 714, 511 S.E.2d 413 (Ct.App.1999); *Tanyel v. Osborne*, 312 S.C. 473, 441 S.E.2d 329 (Ct.App.1994). The trial court found Joubert's loss was sustained, if at all, on March 24, 1994 when the children were removed from The Pines, on May 18, 1994 when his name was entered on the DSS Central Registry for Child Abuse & Neglect, or, at the latest, on June 21, 1994 when he received the letter from DSS informing him that his operation license would not be renewed. As to The Pines, the trial court found that any loss would have occurred on March 24 when the facility was closed or on June 21 when Joubert received the non-renewal letter. According to the trial court then, June 21, 1994 is the latest date either plaintiff could reasonably claim as the date of loss.

 Plaintiffs, on the other hand, assert their loss occurred on September 20, 1995, when the family court reversed the DSS administrative decision. They contend since there was no final ruling until that date, the statute of limitations could not have begun to run. Under the Tort Claims Act, however, the statute of limitations begins to run when the plaintiff should know that he might have a potential claim against another, not when he develops a full-blown theory of recovery.

> The discovery rule is applicable to actions brought under the Tort Claims Act. *Barr v. City of Rock Hill*, 330 S.C. 640, 500 S.E.2d 157 (Ct.App.1998). In *Dean v. Ruscon Corp.*, 321 S.C. 360, 468 S.E.2d 645 (1996), the Supreme Court explicated:
>
> > According to the discovery rule, the statute of limitations begins to run when a cause of action reasonably ought to have been discovered. The statute runs from the date the injured party either knows or should have known by

the exercise of reasonable diligence that a cause of action arises from the wrongful conduct. We have interpreted the "exercise of reasonable diligence" to mean that the injured party must act with some promptness where the facts and circumstances of an injury place a reasonable person of common knowledge and experience on notice that a claim against another party might exist. Moreover, the fact that the injured party may not comprehend the full extent of the damage is immaterial.

*Dean,* 321 S.C. at 364, 468 S.E.2d at 647 (citations omitted). *See also Wiggins v. Edwards,* 314 S.C. 126, 442 S.E.2d 169 (1994) (exercise of reasonable diligence means simply that injured party must act with some promptness where facts and circumstances of injury would put person of common knowledge and experience on notice that some right of his has been invaded or that some claim against another party might exist; statute of limitations begins to run from this point and not when advice of counsel is sought or full-blown theory of recovery is developed); *Burgess v. American Cancer Soc'y,* 300 S.C. 182, 386 S.E.2d 798 (Ct.App.1989) (statute starts to run upon discovery of such facts as would have led to knowledge thereof if pursued with reasonable diligence).

The date on which discovery should have been made is an objective, not subjective, question. *Kreutner v. David,* 320 S.C. 283, 465 S.E.2d 88 (1995); *Wiggins, supra.* In other words, whether the particular plaintiff actually knew he had a claim is not the test. Rather, courts must decide whether the circumstances of the case would put a person of common knowledge and experience on notice that some right of his has been invaded, or that some claim against another party might exist.

*Young,* 333 S.C. at 716–18, 511 S.E.2d at 415–16. *See also, Tanyel,* 312 S.C. at 475, 441 S.E.2d at 330; *Smith v. Smith,* 291 S.C. 420, 354 S.E.2d 36 (1987); *Barr v. City of Rock Hill,* 330 S.C. 640, 644, 500 S.E.2d 157, 159–160 (Ct.App.1998) (cause of action generally accrues under South Carolina law "the moment the defendant breaches a duty owed to the plaintiff") (quoting *Grooms v. Med. Soc'y of S.C.,* 298 S.C. 399, 402, 380 S.E.2d 855, 857 (Ct.App.1989)). Joubert knew he had a potential claim against DSS in 1994, by the time he hired an

attorney to represent his interests. *See Smith,* 291 S.C. at 426, 354 S.E.2d at 40 (finding the consultation of an attorney demonstrated notice of potential claim).

The statute of limitations begins to run when a cause of action reasonably ought to have been discovered. In determining whether the cause of action should have been discovered, it must be decided when the facts and circumstances of the injury would put a person of common knowledge on notice that some right has been invaded or the claim against another party exists. *Smith v. Smith,* 291 S.C. 420, 354 S.E.2d 36 (1987); *Snell v. Columbia Gun Exchange,* 276 S.C. 301, 278 S.E.2d 333 (1981).

*Benton v. Roger C. Peace Hosp.,* 313 S.C. 520, 524, 443 S.E.2d 537, 539 (1994).

In his brief to this Court, Joubert admits he has "consistently alleged and contended that [DSS has] been on notice since March 24, 1994, of the claims for damages sustained" by himself and The Pines. If the contention is that DSS was on notice of a claim for damages since March 24, 1994, then surely Joubert was aware of the possible cause of action. Indeed, Joubert's attorney, in a letter to the DSS director dated November 22, 1994, stated that he had advised Joubert to "seek legal redress in another appropriate forum." Even if we considered this date as the time Joubert was obviously aware of his loss, it would have been necessary to file the instant actions by November 22, 1996. *See Browning v. Hartvigsen,* 307 S.C. 122, 414 S.E.2d 115 (1992) (section 15–78–110 of Tort Claims Act is triggered by the date a cause of action accrues); *Searcy v. Dep't of Educ., Transp. Div.,* 303 S.C. 544, 402 S.E.2d 486 (Ct.App.1991) (under § 15–78–110 the two year statute of limitations applies if a verified claim is not filed). Under these circumstances we find a reasonable person would have been on notice that a claim against DSS existed as early as March 24, 1994, but no later than November 22, 1994. Even accepting the latest date, the case *sub judice* was filed after the appropriate two-year statute of limitations had run.

### III. Due Process and Claim for Failure to Comply

Finally, the issues on appeal concerning an alleged due process violation and additional claims for damages not barred

by the statute of limitations are not preserved. *See Solomon v. City Realty Co.*, 262 S.C. 198, 203 S.E.2d 435 (1974) (conclusory arguments are deemed abandoned); *Fields v. Melrose Ltd. Partnership*, 312 S.C. 102, 439 S.E.2d 283 (Ct. App.1993) (an issue is deemed abandoned and thus not presented for appellate review if argued in a short, conclusory statement without supporting authority).

### CONCLUSION

We rule S.C.Code Ann. § 15–78–70(b) is efficacious only to employees of a government agency and is inapposite to an action filed against a governmental entity under the Tort Claims Act. We hold Joubert and The Pines did not file a verified claim entitling them to the three-year statute of limitations. Accordingly, each had only two years from the date of loss to bring the instant actions. Because the losses should have been discovered, at the latest, by November of 1994, and these suits were not commenced until 1997, we find the two-year statute of limitations operated as a complete bar. Therefore, as no genuine issue of material fact exists regarding when the causes of action accrued and when they were filed, the trial court did not err in granting summary judgment to DSS.

**AFFIRMED.**

HEARN, C.J., and SHULER, J., concur.