THIS OPINION HAS NO PRECEDENTIAL VALUE.  
 IT SHOULD NOT BE CITED OR RELIED ON AS
PRECEDENT IN ANY PROCEEDING EXCEPT AS 
 PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Gloria R. Owenby and John W. Owenby, Appellants,
v.
Kyle F. Kiesau, M.D.; Auburn Woods, III, M.D.; Julian Williams, M.D.; 
 Claude D. Woollen, M.D.; Robert A. Cochran, Jr., M.D.; David C. Hull, 
 M.D.; Cole Blease Graham, III, M.D.; Neil H. Parnes, M.D.; Brian
Baghdady, 
 M.D.; Lawrence Warren, Jr., M.D.; Mark Monson, M.D.; Drs. Kiesau, Barrow 
 & Davis, P.A.; Hull, Green, Woods, Cochran & Woollen, LLC; Spartanburg 
 Radiological Associates, P.A.; and the Spartanburg Regional Medical Center, 
 Defendants,/Of whom Spartanburg Regional Medical Center is, Respondent.
 
 
 

Appeal From Spartanburg County
 Larry R. Patterson, Circuit Court 
 Judge

Unpublished Opinion No. 2004-UP-610
Submitted November 1, 2004  Filed December 
 7, 2004 

AFFIRMED

 
 
 
John Kirkman Moorhead, of Anderson, for Appellant.
William B. Darwin, Jr., of Spartanburg, for Respondent.
 
 
 

PER CURIAM:  In this medical negligence 
 claim, appellants Gloria Owenby and her husband John Owenby, appeal the trial 
 courts grant of summary judgment and argue that the two-year statute of limitations 
 for the claim had not run.  We affirm. 
 [1] 
FACTS
After experiencing 
 serious discomfort in her abdominal region for several weeks, Gloria Owenby 
 visited a doctor and less than a week later she had surgery to remove a 24-pound 
 ovarian tumor, her ovaries, and her gall bladder. Dr. Kyle Kiesau and Dr. Auburn 
 Woods performed the surgery on July 21, 1999 at Spartanburg Regional Medical 
 Center. 
The chronology of events 
 in this case is critical.  After her discharge from the hospital on July 27, 
 Mrs. Owenby continually experienced a series of health problems for which various 
 physicians treated her.  On August 10, Dr. Julian Williams examined Mrs. Owenbys 
 abdominal swelling and referred her again to Dr. Kiesau, an obstetrician/gynecologist.  
 Drs. Williams and Kiesau examined Mrs. Owenby August 24 and Dr. Kiesau informed 
 Mrs. Owenby that he believed a hematoma resulting from the surgery was causing 
 the continued swelling and subsequently approved her to take a planned vacation 
 with her husband. Mrs. Owenby described herself as deathly sick throughout 
 the vacation and visited Dr. Kiesau upon her return on September 17 and September 
 24, where he became concerned with her increased swelling.  Dr. Kiesau referred 
 Mrs. Owenby to Dr. Woods, a general surgeon, and Dr. Woods performed an ultrasound 
 on September 27.  Dr. Woods determined Mrs. Owenbys abdomen was full of fluid, 
 opining that she was suffering from a seroma as a result of the surgery. 
 [2]   
Mrs. Owenby visited Dr. Woods 
 office with continued abdominal drainage on October 4 and October 6.  Dr. Lawrence 
 Warren, when performing an ultrasound procedure on October 18, asked the Owenbys 
 if the fluid had been tested to see if it was urine, indicating that sometimes 
 during surgery, the ureter is damaged by getting small slits or holes in it, 
 which creates leakage. [3]   Later that same day, Dr. Woods told Mrs. Owenby 
 that he had spoken with Dr. Warren and that a test would be scheduled to determine 
 if the fluid was urine as Dr. Warren suspected.  After abdominal and pelvic 
 CT scans were performed on October 19, Dr. Woods office called Mrs. Owenby 
 on October 21 and instructed her the tests indicated she should see a urologist 
 immediately. 
On October 26, 1999, Mrs. Owenby 
 saw an urologist, Dr. Clifton Williams, who told her she had an injured left 
 ureter that was leaking and causing urine to drain into her abdomen and that 
 it needed to be repaired. On November 2, Dr. Williams attempted to repair Mrs. 
 Owenbys ureter but was unsuccessful, because, as he discovered during surgery, 
 Mrs. Owenbys ureter was completely severed, about which he informed Mrs. Owenby 
 after the procedure. [4]   
Mrs. Owenby was asked under oath 
 if October 26, 1999 was the first time she recalled being told she had a ureter 
 that apparently had some sort of leak and was causing this excess drainage? 
 She responded: Other than what I believe the radiologist, Dr. Warren, told 
 me that day, that was the only time I heard that mentioned that I recall.  

The Owenbys filed this action 
 for medical negligence on October 31, 2001 based on a ureter injury and served 
 Dr. Kiesau on November 1, 2001.  Spartanburg Regional, a governmental entity, 
 was substituted as a defendant for Dr. Kiesau and moved for summary judgment. 
 [5]  At the summary judgment hearing, the trial court ruled that the statute 
 of limitations had run. This appeal follows.         
LAW/ANALYSIS
 In arguing that the trial 
 court erred in granting summary judgment based on the running of the statute 
 of limitations, Mrs. Owenby submits that she did not discover her injury until 
 November 2, 1999 and she filed her claim in a timely fashion.  We disagree.
 In an action against a governmental 
 entity, the two-year statute of limitations of the South Carolina Tort Claims 
 Act applies.  S.C. Code Ann.  §§15-78-100(a)110 (Supp. 2003).  In examining 
 when the statute of limitations began to run, the discovery rule applies.  
 Young v. South Carolina Dept. of Corrections, 333 S.C. 714, 718, 511 
 S.E.2d 413, 415 (Ct. App. 1999) (holding that the discovery rule applies to 
 actions brought under the South Carolina Tort Claims Act).  

 According to the discovery 
 rule, the statute of limitations begins to run when a cause of action reasonably 
 ought to have been discovered.  The statute runs from the date the injured 
 party knows or should have known by the exercise of reasonable diligence that 
 a cause of action arises from the wrongful conduct.
 . . . .
 [T]he injured party must act with some promptness where the 
 facts and circumstances of an injury place a reasonable person of common knowledge 
 and experience on notice that a claim against another party might exist. 
  Moreover, the fact that the injured party may not comprehend the full extent 
 of the damage is immaterial.

 Id. at 719, 511 S.E.2d at 416 (quoting Dean v. Ruscon Corp., 
 321 S.C. 360, 364, 468 S.E.2d 645, 647 (1996) (citations omitted) (emphasis 
 in original)).  See also, Joubert v. Dept of Soc. Servs., 341 
 S.C. 176, 190, 534 S.E.2d 1, 8 (Ct. App. 2000) (finding that the statute of 
 limitations under the South Carolina Tort Claims Act begins to run when the 
 plaintiff should know that he might have a potential claim against another, 
 not when he develops a full-blown theory of recovery).  The date when the 
 discovery should have been made is an objective question.  Young, 333 
 S.C. at 719, 511 S.E.2d at 416.

 [W]hether the particular 
 plaintiff actually knew he had a claim is not the test.  Rather, courts must 
 decide whether the circumstances of the case would put a person of common 
 knowledge and experience on notice that some right of his had been invaded 
 or that some claim against another party might exist.

 Id.
 The crux of Mrs. Owenbys argument 
 is that her injury was not discoverable to a person of common knowledge.  
 She cites Pederson v. Gould, 288 S.C. 141, 341 S.E.2d 633, 634 (1986) 
 for her argument that expert testimony is often needed in medical malpractice 
 actions, because the subject matter is outside the scope of common knowledge.  
 The Pederson court does find that damage to the ureter that occurs 
 during a hysterectomy does not fall under common knowledge exception.  Id. 
 at 143, 341 S.E.2d at 634.  However, the common knowledge exception rule applies 
 to the use of expert testimony in medical malpractice cases to determine the 
 appropriate standard of care.  Id. at 142-43, 341 S.E.2d at 634-35 
 (finding that the trial court did not err in failing to charge the jury as 
 to the common knowledge exception).  The support is misplaced.  The present 
 case is about the discovery of an injury.
 As to the discovery of her injury, 
 Mrs. Owenby attempts to distinguish her situation from that in Bayle v. 
 South Carolina Dept of Transp., 344 S.C. 115, 542 S.E.2d 736 (Ct. App. 
 2001). [6]   Further she argues 
 that the injury to the party in Bayle was easier to link to the car 
 accident that caused it.  The Bayle court held that the plaintiffs 
 loss, which triggered the statute of limitations, was the death of his wife, 
 not the date he learned of a possible latent defect in the road.  Id. 
 at 122, 739 S.E.2d at 739.  The trial court simply cited the discovery rule 
 in Bayle, which cites Dean, Young, and Joubert 
 all mentioned above.  She further argues that this simplified understanding 
 of the discovery rule is countered by Strong v. Univ. of South Carolina 
 School of Medicine, 316 S.C. 189, 447 S.E.2d 850 (1994).  She interprets 
 Strong as holding injury only is not enough to start the statute of 
 limitations, that circumstances sufficient to put the injured party on notice 
 are needed. [7]   Mrs. 
 Owenby argues the trial court relied on her knowledge of the injury only, 
 rather than her knowledge that a claim might exist, citing the facts of Strong 
 where the plaintiff knew of his blindness in May 1989 but did not know the 
 cause until June 1989, when a doctor noted it in the plaintiffs medical file.  
 Id. at 191, 447 S.E.2d at 852.  In the instant case, the trial court 
 did not determine that the statute of limitations started with Mrs. Owenbys 
 first knowledge of any injury.  Rather, the court determined that she was 
 told on October 18, 1999 of the possibility of an injury to her ureter and 
 that such an injury could have been caused during surgery.  Thereafter, 
 she was told that she did indeed have such an injury.  At the latest, Mrs. 
 Owenby discovered her injury on October 26, 1999.
 Mrs. Owenby says that the circumstances did not 
 put her on notice until November 2, 1999. 
 [8]   To find that she needed to know that her ureter was completely severed, 
 as she was told on November 2, does not have foundation in the law, which 
 is that understanding the full extent of the injury is immaterial.  See 
 Young,  333 S.C. at 719, 511 S.E.2d at 416.  By October 
 26, 1999, she knew that she had an injury to her ureter and that it was an 
 injury that could have been caused during surgery.  This was sufficient information 
 to put a person of common knowledge on notice that a claim existed.  
 Viewed in a light 
 most favorable to Mrs. Owenby, the facts of this case make clear that she 
 discovered her injury no later than October 26, 1999.  Because Mrs. Owenby 
 did not file her claim within the applicable statute of limitations, the trial 
 court was correct to have granted Spartanburg Regionals motion for summary 
 judgment.  Therefore, the decision of the trial court is
 AFFIRMED.
 ANDERSON, STILWELL, and SHORT, JJ., concur.

 
 [1] We decide this case without oral argument pursuant 
 to Rule 215, SCACR.

 
 
 [2] From September 30 to October 1, Mrs. Owenby was admitted to Spartanburg 
 Regional to drain some 5,500 milliliters of fluid after the initial procedure. 
 Additional fluid was drained while she was hospitalized and after her 
 discharge from the hospital.

 
 
 [3] The Owenbys both indicated the fluid looked to be urine and drained 
 from at a rate of 1,200 to 1,500 milliliters per day October 6 through October 
 13.

 
 
 [4] Dr. Williams reattached Mrs. Owenbys ureter in a procedure on March 
 20, 2000.

 
 
 [5] By the date of the hearing, all other defendants had been dismissed.

 
 
 [6] She also attempts to distinguish Wiggins v. Edwards, 314 S.C. 
 126, 442 S.E.2d 169 (1994) for the same reason.  

 
 
 [7] Strong reiterates the discovery rule: that the statute of 
 limitations begins to run when a person of common knowledge is put on notice 
 that some right has been invaded or a claim may exist, not when legal advice 
 has been obtained or a full blown theory of recovery has been established.  
 316 S.C. at 191, 447 S.E.2d at 852 (citation omitted).  

 
 
 [8] The length of time it took doctors with expert knowledge to determine 
 her injury, as Mrs. Owenby argues, does not bolster the notion that a person 
 of common knowledge would have known a claim existed once that person was 
 told of the injury.