The opinion of the Court was delivered by
Warjdlaw, Ch.
This Court is content with the Chancellor’s conclusion in this case and in general with his reasoning, although there is not entire concurrence of the members of the tribunal in the same views.
Mr. Williams says, (Wms. on Executors, 1094:) “ a condition that a legatee shall not dispute the will is in general considered in terrorem merely, and will not operate a forfeiture by reason of the legatee’s having disputed the legacy or effect of the will. But where the legacy is given over to another person in case of a breach of such condition, then, if the legatee controvert the will, his interest will cease, and vest in the other legatee. If, indeed, the legacy, instead of being given to a stranger, is limited over toj the executors in the event of such *19 condition being broken, the condition is still regarded as in ter-rorem, and not obligatory. Yet, if the testator direct the le- ■ gacy to fall into the residue upon a breach of the condition, and dispose of that fund, the residuary legatee will be a particular legatee of the individual legacy; and, as such, will be entitled to it, if the condition is broken.”
Without intention or authority to commit the Court to this extent, I express my own opinion, in which Chancellor Johnston fully concurs, that a condition subsequent of this description is void, whether there be a devise over or not, as trenching on the liberty of the law,’ Shep. Touch. 132, and violating public policy. In Morris vs. Burroughs, 1 Atk. 404, Lord Hardwicke held such a condition to be clearly in terrorem, and that no forfeiture could be incurred by contesting any disputable matter in a Court of Justice. In Powell vs. Morgan, 2 Vern. 91, cited in the circuit decree, it was adjudged that breach of such condition involves no forfeiture where there is probabilis causa litigandi. In one of the latest cases on this subject, Cooke vs. Turner, 15 M. and Wels. 727, a condition was supported as valid, that if the divisee should dispute the sanity and competency of testator to make a will, (although testator had been found by inquest to be a lunatic,) or should refuse when required by the executors to confirm the will, the disposition in favor of such devisee should be revoked. In delivering the judgment of the Exchequer, Lord Cranmore, now Lord Chancellor, then Sir R. M. Rolfe, admits that the policy of the State prevents a testator from making the continuance of an estate depend on the legatee’s committing a crime, or refraining to do that which it is or may be the interest of the State that he should do, such as that he should not marry? should not engage in commerce, should not plough his arable land, or should not do anything else, the performance of which partakes of the character of a duty of imperfect obligation; but he insists that there is no duty of perfect or imperfect obligation on an heir to contest his ancestor’s sanity, and that it matters nothing to the State, whether the land be enjoyed by *20 devisee or heir. It seems to me that this is a very narrow view of public policy. It is the interest of the State, that every legal owner should enjoy his estate, and that no citizen should be obstructed by the risk of forfeiture from ascertaining his rights by the law of the land. It may be politic to encourage parties in the adjustment of doubtful rights by arbitration or by private settlement; but it is against the fundamental principles of justice and policy to inhibit a party from ascertaining his rights by appeal to the tribunals established by the State to settle and determine conflicting claims. If there be any such thing as public policy, it must embrace the right of a citizen to have his claims determined by law. The only authority quoted by the learned Judge, in support of his judgment, is the case of Stapilton vs. Stapilton, 1 Atk. 2. There an arrangement between a father and two sons to cut off an entail, was nearly but not entirely consummated before the death of the eldest son ; and to the bill of his infant heir for specific performance of the agreement, the younger son objected, in contravention of the previous settlement between the father and two sons, that the elder son was a bastard. His objection was properly overruled by Lord Hardwicke, who proceeded on the efficacy of family arrangements concerning doubtful rights. This case has no application to a condition in a will. Perhaps the condition in. the present case is void even upon the notion of public policy declared by Baron Rolfe. The legatee here is subjected to forfeiture of her estate on condition she supports the policy of the State announced in the Act of 1841,11 Stat. 154, inhibiting the practical emancipation of slaves, and gifts and trusts for their benefit. It must be against public policy to allow a testator to impose a condition intended to defeat such cardinal provisions, deliberately enacted by the legislature.
'But the doctrine of the validity of such a condition, where there is a devise over, is too firmly established to be overruled, except upon grave consideration in some case where the point is necessarily involved in the decision; and that is not thé fact here.
*21 Is there a devise over in the present case ? The testator does not himself revoke the legacy on breach of the condition by a legatee, but gives to his executors a discretionary power, (which they may or may not exercise,) to revoke the legacy after his death on breach of the condition, and to distribute the legacy, as to them might seem proper, among other objects of his bounty. There is no devise over to any particular person-No interest was vested in any one by the law at the death of testator which could not be fetched back by equity; according to the prominent reason assigned for forfeiture where there is a devise over. Nor is there any distinct manifestation of testator’s intent that the forfeiture is not declared merely in terro-rem ; according to another reason assigned for this doctrine. All is left to the discretion of the executors, and nothing is commanded peremptorily. The great distinction between a power and a trust, is that the former is peremptory in its character. My brethren think it may be unsafe to place the decision on the ground that there is no devise over, inasmuch as a power, when executed, derives its efficacy from the will or other instrument of grant, and has retro-active relation, and is incorporated with the instrument of grant. I say for myself, that this can hardly be predicated of a power to be exercised on a contingency which may never happen, and if it happen, to be exercised only if the donees think’ the exercise judicious. A power coupled with a trust may be sometimes as peremptory as a mere power. But here the executors have a discretion to revoke, and a discretion as to the distribution of the legacy when revoked. So far from any command to them, there is a mere delegation of authority to make on a contingency a new. will for testator if they so choose. No authoritative case requires us to consider the exercise of such power of appointment to executors as equivalent to a devise over by the testator himself; and I am unwilling to extend the efficacy of such a condition a line beyond the limit that authority compels me.
It Remains to inquire whether the power, if lawfully committed to the executors, of revoking the legacy of a legatee *22 controverting the will, has been exercised in relation to the plaintiff. The actihg executor, without the concurrence of two other persons, who were appointed executors by the testator, and who are still living, although they have renounced the office of executor, has exercised, after the institution of the present suit, the power committed to the executors, of revoking the legacies to plaintiff, and of distributing her legacies among the other objects of testator’s bounty. A naked power given jointly to several persons does not survive if one of the donees dies. A nice distinction is established as to the exercise by surviving executors of a power given to them jointly with others who may be dead, dependant on the fact whether they are designated by name in the donation of the power, or are mentioned only in their official character as executors. By the common law, a power of selling lands jointly conferred on executors by name, is defeated by the death of one of them; but if an administrative power, pertinent to their office, be conferred on executors without naming them, it may survive on the death of one to others who come within the description of the grant of power. Where a power to sell is given to three executors generally, (the doctrine is different if they be named in the donation,) two surviving executors may sell, because the plural number of executors remains to satisfy the terms. Co. Litt. 113, a.; Vincent vs. Lee, 1 Sug. Pow. 143. Probably from the greater liberality of modern decisions, the power in such case would be adjudged to survive to a single executor. But the case of a surviving executor is not identical with the case of one acting executor, where other living persons have been appointed executors, and have renounced the office. Formerly^ where a power to sell was given to executors, and one of them refused the trust, the others could not sell. But by the statute of 21 Hen. VIII, c. 4, (2 Stat. 457) it is provided that where lands are willed to be sold by executors, and some of them refuse the office and administration of the will, sale by the executors who accept the administration, shall be as valid as if all the executors had joined. In Drayton vs. Glenn, 2 Des. 250, *23 'in note, it was held, perhaps against the weight of English authorities, that this statute did not extend to the case where a testator directed a sale without expressly empowering his executors to make sale. This decision probably induced our Act of 1787, (5 Stat. 15,) empowering a majority of the acting executors to sell and convey, where a sale was directed by testator without appointing any one to make it j and empowering the administrator with the will annexed to sell, if the executors should die or renounce. It is obvious, that neither the English statute nor our own alters the common law as to joint powers given to executors, except in the special case of a power to sell lands. If, by any liberality of construction, we might be disposed to extend the statutory provisions concerning a joint power to sell to other powers given jointly to executors, pertinent to their office, and necessary to their administration of estates committed to them, we could not venture to include a power altogether independent of their office as executors. In such case a power jointly conferred on two or more would not survive on the death of one, much less on his renouncing probate. In Townsend vs. Wilson, 1 Barn. and Ald. 608, where a power of sale was given to three trustees and one died, it was held that the survivors could not exercise the power. This judgment was denounced but followed by Lord Eldon in Hall vs. Dewes, 1 Jac. 189 (4 E. C. R. 88,) and maintained in Bradford vs. Belfield, 2 Sim. 264, (2 E. C. R. 407.) In Peyton vs. Bury, 2 P. Wms. 626, a testator devised the residue of his personal estate to J. S., provided she marry with the consent of his two executors; held, that on the death of one of them, the condition became impossible, and that she might marry without consent of the survivor. In Graydon vs. Hicks, 2 Atk. 16, a power to consent to the marriage of a legatee was given to several executors. One renounced the office and the administration. It was held that he was included within the description, and that the power was not annexed to the office of executor, and that it was independent of the rest of his duty as *24 executor. Sir Edward Sugden, afterwards Lord St. Leonards and Lord Chancellor, in his treatise on powers, (1 Sug. Pow., 138,) says, that where the power is given to executors, they may exercise it, although they renounce probate of the will. He refers, for authority, to Keates vs. Burton, 14 ves. 434, and especially to a case in the reign of Henry VII, before the English statute above quoted. (2 Sug. Pow. 535). In this latter case, it is adjudged, that if a man makes his will, that his executors shall alien his land, without naming their proper names, if they refuse the administration and to be executors, yet they may alien the land : quod, fuit concessum per Fineux et Tremaile for clear law: Rede non dedixit. Renunciation of the office of executor implies no renunciation of a power not pertaining to the office of executor, not connected with the administrative functions of an executor. A power to revoke a legacy and make new distribution, is quite independent of the office of executor ; it might well be conferred on persons named as executors who do not act in the general administration of the estate ; and in effect, it delegates the office of testator, quite independent of the execution of an existing will. R. G. McCaw and J. R. Bratton still retain, notwithstanding their renunciation of ex-ecutorship, the independent discretionary power of revocation and appointment; and this power has not been exercised by them. In Cole vs. Wade, 16 Ves. 27, a testator gave the residue of his estate to his executors, in trust for such of his relations and kindred, and in such proportions, manner and form as his executors should think proper. Sir William Grant said: “ I conceive that wherever a power is of a kind that indicates a personal confidence, it must prima facie be understood to be confined to the individuals to whom it is given, and will not, except by express words, pass to others by legal transmission, who may happen to sustain the same character.” He quotes a case from Moor, 61, pi. 172, where all the judges concurred in holding that a power implying personal confidence, being joint,was determined by the death of one of the appointees. Pow *25 ell vs. Morgan, 2 Vern. 91; Loyd vs. Spillet, 3 P. Wms, 344; S. C. 2, Atk. 148 ; Popham vs. Taylor, 1 Br. C. R. 168 ; Walter vs. Maunde, 19 Ves. 424; 1 Sag. Pow. 334, 336.
It is further argued that as the plaintiff cannot claim under and against the will, it is a case of election for her, whether she will give effect to the fourth clause of testator’s will; or renounce all the legacies in her favor ; at least that she is bound to make compensation from her legacies to the legatees whom she disappoints. But the Act of 1841 makes the legacy in the 4th clause void as against public policy, and the plaintiff does not claim against any valid portion of the will, and merely urges that the will shall be established according to its legal import and operation. In the proper construction of the will, we must consider the fourth clause as struck out, and forming no part of the testator’s dispositions. Besides, the legatees supposed to be disappointed here, are slaves, who have no civil rights or status in Courts, through which they might assert a claim for compensation.
Again it is argued, that nothing beyond the services or hire of Dick is given in trust for other slaves, and therefore void by the Act of 1841, and falling within the operation of the residuary clause. Hut either Dick is given absolutely in trust for slaves, or the remainder in him is not disposed of; and in either aspect, he passes by the residuary clause. The residuary legatees happen to be the next of kin of testator;
It is ordered and decreed, that the appeal be dismissed, and the Circuit decree be affirmed.
Johnston, Dunkin and Dargan, CO., concurred.

Appeal dismissed.