359 S.C. 351 (2004)
597 S.E.2d 835
Ex parte T. Alexander BEARD, Appellant,
In re Keith Watkins, Plaintiff,
v.
Newsome Management Company, Newsome Auto World, John H. Newsome, Jr., and John H. Newsome, III, Defendants of whom Keith Watkins is, Respondent.
No. 3800.
Court of Appeals of South Carolina.
Heard March 11, 2004.
Decided May 24, 2004.
Rehearing Denied June 25, 2004.
*353 T. Alexander Beard, of Mt. Pleasant, for Appellant.
A. Camden Lewis, of Columbia, for Respondent.
*354 BEATTY, J.:
Attorney T. Alexander Beard appeals an order of the trial court denying his motion for sanctions brought under the Frivolous Civil Proceedings Sanctions Act ("the FCPSA"), S.C.Code Ann. § 15-36-10, et seq. (Supp. 2003) and Rule 11, SCRCP. The trial court found that Beard's motion was time barred under the FCPSA and that the court had no jurisdiction to grant the requested relief. Alternatively, the trial court allowed the motion under Rule 11 and found that the actions at issue were done in good faith and did not constitute sanctionable behavior. We affirm.

FACTS
The initial dispute resulting in this action arose over the operation and ownership of two limited liability companies. Keith Watkins worked for a substantial period of time for John Newsome, Jr., a car dealership owner. Due to various federal tax problems, Newsome was unable to retain sole ownership of four car dealership franchises. Newsome attempted to transfer their ownership to his wife and son, but the manufacturers rejected that attempt because his wife and son were not acceptable as car dealers. Newsome then suggested Watkins. The manufacturers accepted Watkins because of his experience in the field.
In 1996, Newsome transferred the four dealerships to two newly formed L.L.C.s, Imports of Florence and Newsome Automotive. As required by the manufacturers, Watkins was made "dealer-operator" of both companies and given a 15% ownership interest in each. The L.L.C. operating agreements ("the original agreements") called for contributions from Watkins of $40,050 and $13,418. Beard did not represent any of the parties in connection with the original agreements.
In 1997, the parties apparently reached a new agreement and Newsome decided to memorialize that new agreement. Beard drafted the new L.L.C. agreements ("the new agreements"). The new agreements reflected that Watkins had a 15% voting interest and a 1% interest in profits and losses. The new agreements also gave the L.L.C.s the right to redeem Watkins's interests for $1,000 each. In February 1998, all of the changes were underlined in red and sent to the *355 parties for their signature. Accompanying the new agreements was a letter from Beard which included the following explanation:
Everyone needs to know and understand that I am representing you [Newsome] and your interests and not the interests of the LLC members. My limited information indicates that everyone is in agreement with whatever you want to do. To avoid any conflicts of interest or possible misunderstandings, I strongly suggest, by copy of this letter, that the LLC members have their own professionals review these materials.
Watkins understood that Beard was never his personal attorney and was not representing his interest in this matter. He contacted a local attorney about the new agreements, but that attorney had a conflict of interest. Watkins then contacted a second attorney, who recommended a third local attorney and sent the new agreements to his office. That third attorney in fact represented Watkins in the 1998 transactions. Watkins signed the redrafted L.L.C. operating agreements in April 1998.
Eight months later, Watkins was notified that the L.L.C.s were exercising the option to purchase his interests. Watkins consulted his attorney. He then signed both assignment and indemnity agreements and cashed both $1,000 checks. Soon after the buy-back from Watkins, Newsome entered into an asset purchase agreement with Sonic Automotive, Inc. for the purchase of several dealerships owned by the Newsome family, including those owned by the two L.L.C.s at issue. Watkins demanded $250,000 consideration to consent to the purchase. Sonic and Newsome determined that Watkins had no interest in the dealerships and that they did not need his authorization or consent to go forward with the sale. The sale was closed in May 1999. Watkins filed suit in January 2000 against Newsome and the L.L.C.s, claiming, among other things, fraud and unfair trade practices. Beard represented the defendants in that matter.
In January 2001, Watkins's attorneys, Richard J. Breibart and Richard A. Harpootlian, filed a motion to amend the complaint, attempting to name Beard as a defendant. The amended complaint alleged malpractice and breach of fiduciary *356 duty on the part of Beard. Those allegations were supported by an expert's affidavit from Professor Gregory B. Adams of the University of South Carolina School of Law. He opined that a special relationship and confidence existed between Beard and Watkins, creating an attorney-client relationship. Professor Adams also concluded that Beard had breached that relationship. The trial court denied the motion to amend the complaint on February 6, 2001. In August 2001, the parties reached a settlement and the action was dismissed with prejudice.
On February 4, 2002, Beard filed a motion seeking attorneys' fees under the FCPSA[1] and Rule 11, SCRCP. He also filed a motion to enlarge the ten-day limitation for filing under the FCPSA since that time had expired. Beard claimed that the attempt to name him as a party defendant was for improper purposes and that Breibart and Harpootlian did not reasonably believe the facts upon which the claim was based. Beard alleged that Breibart and Harpootlian admitted that they moved to amend their complaint "because [they] believed they could get more from Beard in a deposition if he were a party and to `drive a wedge' between Beard and his client."
In September 2002, the trial court issued an order denying Beard's motions on the grounds that it did not have jurisdiction to grant the requested relief after ten days under the FCPSA. Alternatively, the court ruled that the attorneys had acted in good faith and therefore Rule 11 sanctions were unwarranted. This appeal followed.

ISSUES
I. Did the trial court err in applying the ten-day limitation for a motion brought under the Frivolous Proceedings Act?
II. Did the trial court err in not ruling on Appellant's motion for enlargement of time under Rule 6?
III. Did the trial court err in finding that the claims against Appellant were made to secure a proper purpose?

*357 IV. Did the trial court err in finding that Respondent's attorneys acted in good faith?
V. Did the trial court err in not considering the issue of an attorney's immunity vis-a-vis a third party?

STANDARD OF REVIEW
An action for attorneys' fees is one in equity. Hanahan v. Simpson, 326 S.C. 140, 156, 485 S.E.2d 903, 912 (1997). In an action in equity tried by a judge alone, the appellate court has jurisdiction to find facts in accordance with its own view of the preponderance of the evidence. Id.; see also Townes Assocs., Ltd. v. City of Greenville, 266 S.C. 81, 86, 221 S.E.2d 773, 775 (1976). However, following the determination of facts, an appellate court applies an abuse of discretion standard in reviewing the decision to award sanctions and the specific sanctions awarded. Father v. SCDSS, 353 S.C. 254, 261, 578 S.E.2d 11, 14 (2003).

LAW / ANALYSIS

I & II. Frivolous Civil Proceedings Sanctions Act
Beard argues that his motion is permissible under the FCPSA since the FCPSA does not specify a statute of limitation. However, Watkins contends that the general ten-day limitation for post-trial motions applies here and bars the action. We agree with Watkins.
This Court addressed the timing of post-trial motions for sanctions in Pitman v. Republic Leasing Co., 351 S.C. 429, 570 S.E.2d 187 (Ct.App.2002). In that case, the defendant moved for sanctions two months after summary judgment had been granted in his favor. The Court vacated the award of attorneys' fees. It held that a trial court cannot entertain a motion for sanctions under the FCPSA where that motion was filed more than ten days after the judgment. Pitman analogized a motion under the FCPSA to post-trial motions under Rule 59(d) and (e), SCRCP, which provide: "[n]ot later than 10 days after entry of judgment, the court of its own initiative may order a new trial for any reason ..."; and "[a] motion to alter or amend the judgment shall be served not later than 10 days after receipt of written notice of the entry of the order."
*358 Beard maintains that those are merely rules of limitation and do not affect the jurisdiction of the court. Additionally, Beard argues that the proper time limit in this case is three years, since this is an action for a penalty upon a statute. See S.C.Code Ann. § 15-3-540 (1976). In essence, Beard mounts a direct challenge to Pitman and asks us to overrule that decision.
We agree that the rules limiting post trial motions are rules of limitation, not of jurisdiction. See Standard Fed. Sav. & Loan Ass'n v. Mungo, 306 S.C. 22, 26 n. 1, 410 S.E.2d 18, 20 n. 1 (Ct.App.1991) ("The ten day requirement of Rule [59] is, however, a rule of limitation, not a rule of jurisdiction ... [and] does not affect the jurisdiction of the court."). However, the argument that these are rules of limitation cannot be used to defeat the jurisdictional limit of trial courts. See Rule 82(a), SCRCP, ("These rules shall not be construed to extend or limit the jurisdiction of any court of this State...."). The established case law is that a trial judge loses jurisdiction over a case when the time to file post-trial motions has elapsed. Pitman, 351 S.C. at 432, 570 S.E.2d at 189; Ness v. Eckerd Corp., 350 S.C. 399, 402, 566 S.E.2d 193, 195 (Ct.App.2002) ("Although trial judges retain jurisdiction to alter judgments on their own initiative for ten days if a Rule 59(e), SCRCP, motion is filed, after ten days that jurisdiction is lost.").
While the general time limit for an action upon a statute is three years, that limit does not apply if the "statute imposing [the action] prescribes a different limitation." S.C.Code Ann. § 15-3-540 (1976). And the statute creating the action need not expressly provide a different limitation; it can do so by plain implication. See, e.g., Earle v. Owings, 72 S.C. 362, 365, 51 S.E. 980, 982 (1905). Beard's argument that a three-year limitation period applies is therefore not persuasive. Under the FCPSA, "[t]he entitlement of the aggrieved person must be determined by the trial judge at the conclusion of a trial upon motion of the aggrieved party...." § 15-36-30 (emphasis added). This language clearly implies a time limitation for motions under the FCPSA even though the FCPSA did not expressly establish one. We find that the trial court was correct to dismiss Beard's motion as untimely.
*359 Beard next argues that the trial court erred in failing to rule on his Rule 6 motion to extend the time to file for sanctions under the FCPSA. The trial court, contrary to Beard's assertion, did rule on the motion. In its October 30, 2002 order, the court clearly stated: "[b]y implication, the Court denied the Motion to enlarge the time as to the filing under provisions of [the FCPSA]...." Beard insists that Rule 6 permits a trial court to enlarge the time for sanctions under the FCPSA. Assuming, arguendo, that Beard is correct, such permission is, by its very language, at the discretion of the trial judge: "the court for cause shown may at any time in its discretion ... (2) upon motion made after the expiration of the specified period, for good cause shown, permit the act to be done." Rule 6(b), SCRCP, (emphasis added).
In Pitman, the action was time barred even though the delay was only two months. Here, Beard filed his motion almost one full year after the trial court denied Watkins's motion to amend his complaint to include Beard as a defendant and nearly six months after the underlying case was settled. The only "good cause" offered for the one-year delay is ignorance as to the proper time limitation under the FCPSA.[2] While recognizing that the FCPSA may lack specificity, we find that the phrase "at the conclusion of a trial upon motion by the aggrieved party" plainly requires some degree of urgency on the part of an aggrieved party to file a motion upon settlement or judgment of the underlying case. Without a more specific showing of "good cause" for the delay by Beard, we cannot say that the trial judge abused his discretion in denying Beard's Rule 6(b) motion for enlargement.

III & IV. Rule 11
Its ruling concerning the FCPSA notwithstanding, the trial court allowed Beard's motion seeking attorneys' fees and other costs against Watkins and his attorneys under Rule 11, SCRCP.[3] Thus, Beard advanced two arguments on the merit of his motion. Beard first argued that the claims against him *360 were not made for a proper purpose. Beard also argued that Breibart and Harpootlian did not act in good faith. The trial court ruled against Beard, reasoning that Breibart and Harpootlian had good grounds for their motion.[4] Beard maintains that the trial court's ruling was based on erroneous assumptions and therefore must be overturned. We disagree.
At the outset, we note that Beard raises on appeal the proper purpose issue under the FCPSA, not under Rule 11. Though we have found that the trial court correctly dismissed Beard's motion under the FCPSA as untimely, we address the merit of Beard's arguments since the "criteria for Rule 11 sanctions are essentially the same as those for sanctions under the [FCPSA]." The Father v. South Carolina Dep't of Soc. Servs., 345 S.C. 57, 72, 545 S.E.2d 523, 531 (Ct.App.2001).
Breibart and Harpootlian based their decision to sue Beard on an affidavit provided by their expert, Professor Adams, but Beard asserts that Breibart and Harpootlian decided to "give [Professor Adams] selected facts and omit other facts." Specifically, Beard contends that Professor Adams was told that Beard had drafted the original L.L.C. agreement and that Watkins "had always relied on Mr. Beard as lawyer for the two LLCs." However, in his affidavit of April 2002, Professor Adams declared that he had reviewed Beard's February 20, 1998 letter to Watkins, which, among other things, advised Watkins to retain his own legal counsel. Based on that letter, Professor Adams concluded that a fiduciary relationship existed between Beard and Watkins and that Beard breached that duty. Professor Adams also stated that he talked to both *361 Beard and Beard's attorney, but neither was able to change his opinion. We need not determine whether Professor Adams's conclusion was correct  and we do not do so. It is sufficient that Breibart and Harpootlian relied on his expert opinion in bringing the action against Beard.

V. Attorney's Immunity
Beard argues that the trial court should have ruled that an attorney's immunity concerning a third party precluded the motion to add Beard as a party. The trial court refused to consider that issue at the Rule 59(e) hearing because Beard had not raised it at the hearing for sanctions. The record does not indicate, and Beard does not contend, that Beard argued the immunity issue before the trial court's ruling. Therefore, the issue was not preserved. See Patterson v. Reid, 318 S.C. 183, 185, 456 S.E.2d 436, 437 (Ct.App.1995) ("A party cannot for the first time raise an issue by way of a Rule 59(e) motion which could have been raised at trial."); Barr v. City of Rock Hill, 330 S.C. 640, 644, 500 S.E.2d 157, 159 (Ct.App.1998) (refusing to entertain an issue on appeal because it was not argued before the trial court) (citing A. Lassberg & Co. v. Atlantic Cotton Co., 291 S.C. 161, 165, 352 S.E.2d 501, 503 (Ct.App.1986)).

CONCLUSION
Based on the foregoing, the decision of the trial court is
AFFIRMED.
HEARN, C.J., and GOOLSBY, J., concur.
NOTES
[1] S.C.Code Ann. § 15-36-10, et seq. (Supp. 2003).
[2] At the conclusion of the underlying case, Pitman had yet to be decided.
[3] Rule 11, SCRCP, reads in part, "[t]he signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other paper; that to the best of his knowledge, information and belief there is good ground to support it; and that it is not interposed for delay ... If a pleading, motion, or other paper is signed in violation of this Rule, the court, upon motion or upon its own initiative, may impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion or other paper, including a reasonable attorney's fee."
[4] The trial court's order speaks of "good ground" while Beard frames the issue as one of "good faith" or "bad faith." That semantic difference is of no legal import since Rule 11 has been interpreted to include actions done in bad faith. See Runyon v. Wright, 322 S.C. 15, 19, 471 S.E.2d 160, 162 (1996) ("The party and/or attorney may also be sanctioned [under Rule 11] for filing a pleading, motion, or other paper in bad faith ...") (citation omitted).