633 S.E.2d 722

Walker Scott RUSSELL, Respondent,

v.

WACHOVIA BANK, N.A., as Putative Trustee of the Alleged Donald Stuart Russell Revocable Trust and as Putative Trustee of the Alleged Donald Stuart Russell Irrevocable Trust, Virginia U. Russell, Donald S. Russell, Jr., Mildred Russell Williams Nieman, John R. Russell, Thaddeus Russell Williams, Virginia Carol Williams, and Cecilia Frances Williams, Appellants.

and

Mildred R. Neiman, Respondent–Appellant,

v.

Wachovia Bank, N.A., as Personal Representative of the Estate of Donald S. Russell, Sr., Virginia C. Williams, T. Russell Williams, Cecilia F. Williams, Virginia U. Russell, Donald S. Russell, Jr., W. Scott Russell, and John R. Russell, Defendants,

of which Wachovia Bank, N.A., as Personal Representative of the Estate of Donald S. Russell, Sr., Virginia C. Williams, T. Russell Williams, Cecilia F. Williams, Virginia U. Russell, Donald S. Russell, Jr., and John R. Russell are Respondents–Appellants

and

W. Scott Russell is Respondent.

and

Mildred R. Neiman, Respondent–Appellant,

v.

Wachovia Bank, N.A., as Personal Representative of the Estate of Donald S. Russell, Sr., Virginia C. Williams, T. Russell Williams, Cecilia F. Williams, Virginia U. Russell, Donald S. Russell, Jr., W. Scott Russell, and John R. Russell, Defendants,

of which Wachovia Bank, N.A., as Personal Representative of the Estate of Donald S. Russell, Sr., Virginia C. Williams, T. Russell Williams, Cecilia F. Williams, Virginia U. Russell, Donald S. Russell, Jr., and John R. Russell are Appellants–Respondents

and

W. Scott Russell is Respondent.

and

In the Matter of the Estate of Donald S. Russell, Deceased,——
Walker Scott Russell, Respondent,

v.

Virginia U. Russell, Donald S. Russell, Jr., Mildred Russell
Williams Neiman, John R. Russell, and Wachovia Bank,
N.A. as Personal Representative, Appellants.

and

Wachovia Bank, N.A., as Personal Representative
of the Estate of Donald S. Russell, deceased,
Third–Party Appellant Respondent,

v.

Virginia Williams, Russell Williams, Cecilia Williams,
Walker Scott Russell, Jr., and Grace Johnson
Russell, Third–Party Respondents,

of which Virginia Williams, Russell Williams and Cecilia
Williams are Third–Party Respondents–Appellants.

No. 26190.

Supreme Court of South Carolina.

Heard April 6, 2005.
Decided July 24, 2006.

8

Stanley T. Case and Edward G. Smith, of Butler Means Evins & Browne, of Spartanburg, for Appellant–Respondent Wachovia Bank.

G. Dewey Oxner, Jr., and Moffatt G. McDonald, of Haynsworth Sinkler Boyd, of Greenville, for Appellant–Respondent Estate of Virginia U. Russell.

R. Ray Dennis, of Dennis Shaw & Drennan, of Spartanburg, for Appellants–Respondents John R. Russell and Donald S. Russell, Jr.

Thomas E. McCutchen and Hoover C. Blanton, of McCutchen Blanton Johnson & Barnette, of Columbia, for Appellants Virginia C. Williams, T. Russell Williams, and Cecelia F. Williams.

Desa A. Ballard and Jason B. Buffkin, of Law Offices of Desa Ballard, of West Columbia; and Joseph M. McCulloch, Jr., of Law Offices of Joe McCulloch, of Columbia, for Respondent–Appellant Mildred R. Neiman.

J. Neil Robinson, of Robinson Law Office, of Charlotte; and Leo A. Dryer, Jr., of Dryer Law Offices, of Columbia, for Respondent Walker Scott Russell.

Chief Justice TOAL:

The underlying litigation began when beneficiaries of an estate challenged the validity of a will and two trusts, alleging the documents were procured by undue influence. The trial court granted summary judgment in favor of the defendants. This Court affirmed as modified. *Russell v. Wachovia Bank*, 353 S.C. 208, 578 S.E.2d 329 (2003). After remittitur was issued, certain defendants moved for summary judgment, seeking to enforce no-contest clauses appearing in the will and revocable trust. The trial court denied summary judgment, ruling that the no-contest clauses were unenforceable because beneficiaries had probable cause to challenge the estate plan.

The court also issued two orders regarding attorney's fees and costs. After certifying this case for review pursuant to Rule 204(b), SCACR, we affirm in part and reverse in part.

## FACTUAL/PROCEDURAL BACKGROUND

Mildred Russell Neiman (Mim) and Walker Scott Russell (Scott) each filed actions to set aside the will, and revocable and irrevocable trusts of their father, Donald Stuart Russell (Testator).[1] In general, the complaints alleged that Testator was unduly influenced and coerced by Mim's children (the Williams Children), and perhaps others, to design his estate plan as he did. Named defendants included the following: the Williams Children; Mim's ex-husband (Thad Williams); Wachovia Bank (Wachovia), the executor of the estate and the trustee; Testator's wife, Virginia U. Russell (Mrs. Russell), who is now deceased; and Testator's two other children, John R. Russell (Johnny) and Donald R. Russell, Jr. (Donnie).

After extensive discovery was conducted, the trial court granted summary judgment in favor of the defendants. This Court affirmed as modified, holding that the will and trusts were not procured by undue influence. *Russell v. Wachovia Bank*, 353 S.C. 208, 578 S.E.2d 329 (2003). As to the will contest, we found that the record was "devoid of any evidence that the Williams Children or Thad influenced the execution or any modification of the will." Id. at 219, 578 S.E.2d at 335. Similarly, as to the trust contest, we found that there was "no evidence to make out a *prima facie* case of undue influence. . . ." *Id.* at 224, 578 S.E.2d at 337.

Following remittitur, the Williams Children filed a motion for summary judgment seeking to enforce the no-contest clauses appearing in Testator's will and revocable trust. Wachovia intervened, making similar arguments. The no-contest clauses provided that beneficiaries who challenged the validity of the will and trust documents would be disinherited. Therefore, if enforced, these provisions would have the effect of

---

1. Testator served as an active judge on the United States Court of Appeals for the Fourth Circuit until his death on February 22, 1998, at the age of 92. Prior to his appointment to the federal bench, Testator served as governor of South Carolina, United States senator from South Carolina, and President of the University of South Carolina.

disinheriting Mim and Scott for bringing the underlying actions.

Following a hearing, the trial court issued three orders that are the subject of the present appeal. In the first order, the trial court found that Scott and Mim had probable cause to believe that Testator had been unduly influenced by the Williams Children, and perhaps others, prior to his death. As a result, the court ruled that the no-contest clauses were invalid and unenforceable. Wachovia, Mrs. Russell's estate, Donnie, and Johnny appeal.

In the second order, the trial court ordered Mim to pay attorney's fees and costs incurred by Wachovia in the amount of $264,995.31, by her mother's estate in the amount of $147,110.25,[2] and by her brothers, Johnny and Donnie, in the amount of $97,412.83. Mim appeals.

Finally, in the third order, the trial court denied a motion for sanctions filed against Scott and his attorneys. The court also denied the Williams Children's request for attorney's fees and costs. The Williams Children appeal.

Accordingly, the issues presented on appeal are as follows:

I.   Did the trial court properly grant summary judgment in favor of Mim and Scott, finding they had probable cause to contest the validity of the estate plan?

II.  Did the trial court properly order Mim to pay certain attorney's fees and costs?

III. Did the trial court properly deny the Williams Children's request for attorney's fees and costs?

## LAW/ANALYSIS

## I.   No–Contest Clauses

Wachovia, Mrs. Russell's estate, Donnie, and Johnny contend that the trial court erred in granting summary judgment in favor of Mim and Scott, finding they had probable cause to contest the validity of the estate plan. We agree.

---

**2.** This award was later increased to $165,060.68, after the court realized that the original award did not include costs.

■ In general, clauses in a will designed to penalize beneficiaries for contesting a will or instituting other proceedings relating to the estate are valid and enforceable. *E.g., Cox v. Fowler*, 279 Ga. 501, 614 S.E.2d 59 (2005); *In re Estate of Mumby*, 97 Wash.App. 385, 982 P.2d 1219, 1224 (1999). Commonly referred to as "no-contest" or "in terrorem"[3] clauses, such clauses may "protect estates from costly and time-consuming litigation" and "minimize the bickering over the competence and capacity of testators, and the various amounts bequeathed." *In re Estate of Seymour*, 93 N.M. 328, 600 P.2d 274, 278 (1979). No-contest clauses may have the desirable effect of ensuring that the details of a testator's private life are not made public. *Cf. Smithsonian Instit. v. Meech*, 169 U.S. 398, 402–03, 18 S.Ct. 396, 42 L.Ed. 793 (1898) (stating that will contests frequently bring "to light matters of private life that ought never to be made public").

■ But courts in South Carolina and North Carolina,[4] along with a majority of jurisdictions, have recognized an exception to the general rule that no-contest clauses are valid and enforceable. Under South Carolina law, a no-contest clause is unenforceable if the challenger has probable cause for instituting proceedings. S.C.Code Ann. § 62–3–905 (1986). Similarly, North Carolina law provides that a no-contest clause is unenforceable against a person who in good faith and with probable cause challenges the validity of a will. *Ryan v. Wachovia Bank & Trust Co.*, 235 N.C. 585, 70 S.E.2d 853, 856 (1952).

---

3. "Technically, a no-contest clause is only one type of *in terrorem* clause, the latter term including any clause seeking to coerce a person into taking or refusing to take some action." Martin D. Begleiter, *Anti–Contest Clauses: When You Care Enough to Send the Final Threat*, 26 Ariz. St. L.J. 629, n. 2 (1994). The terms are typically used interchangeably, but we use the term "no-contest" throughout this opinion because the clauses in the present case specifically address the consequences of contesting the estate plan.

4. In our prior opinion, we held that issues surrounding the *will* were governed by South Carolina law, and issues surrounding the *trust* were governed by North Carolina law. Because the no-contest clauses appear in both the will and trust, we analyze this issue under the law of each state. In the end, however, we find that the legal standard is the same under both South and North Carolina law.

■ In the South Carolina case of *Rouse v. Branch*, the Court held that beneficiaries contesting a will on the ground that the will was a forgery did not forfeit their right to inherit. 91 S.C. 111, 118, 74 S.E. 133, 135 (1912). In so holding, the Court explained:

> The right of a contestant to institute judicial proceedings upon probable cause, to ascertain whether the will was ever executed by the apparent testator, is founded upon justice and morality. If a devisee should accept the fruits of the crime of forgery, under the belief, and upon probable cause, that it was a forgery he would thereby become morally a *particeps criminis;* and yet if he is unwilling to commit this moral crime, he is confronted with the alternative of doing so, or of taking the risk of losing all, under the will, in case it should be found not to be a forgery.
>
> Public policy forbids that he should be tempted in such a manner.

*Id.* Accordingly, if a beneficiary has a belief, based on probable cause, that a will constitutes a forgery, the beneficiary may (and should) contest the validity of the will, without fear of being disinherited under the terms of a no-contest clause.

Likewise, beneficiaries are permitted to make bona fide inquiries into whether a will was procured through undue influence or duress. In the North Carolina case of *Ryan v. Wachovia Bank & Trust Co.,* six of testator's ten children contested the will, alleging that testator's signature was obtained through undue influence and duress, and that testator was not even capable of executing the document. 70 S.E.2d at 853. Testator was ninety-years old when he died; he was worn out and feeble; was unable to work for several years prior to his death; and, at times, did not recognize his children. *Id.* at 854. Evidence was also submitted that for several years prior to testator's death, two of his daughters— who were among the chief beneficiaries under the will—were always present when testator's other children visited him. Based on this evidence, the court held that a subsequent action challenging the validity of the will was brought in good faith and based on probable cause. Accordingly, the no-contest clause was unenforceable against the challenger. *Id.*

In so holding, the court explained:

In our opinion, a bona fide inquiry whether a will was procured through fraud or undue influence, should not be stifled by any prohibition contained in the instrument itself.

. . .

There is a very great difference between vexatious litigation instituted by a disappointed heir, next of kin, legatee or devisee, without probable cause, and litigation instituted in good faith and with probable cause, which leads the contestant to believe that a purported will is not in fact the will of the purported testator.

*Id.* at 856–57.

In the present case, Testator amended both his will and revocable trust approximately fifteen months before he died to include provisions disinheriting beneficiaries who contested the validity of his estate plan. Accordingly, the second codicil to the will provides:

Should any beneficiary of this Will or of the trust agreement . . . contest the validity of this Will or any provision thereof or attempt to prevent any provision from being carried out in accordance with its terms in legal proceedings or otherwise, then any interest provided for such beneficiary and his or her descendents is revoked and such beneficiary shall be deemed to have predeceased me for all purposes under this Will.

Similarly, the revocable trust was amended to provide:

Should any beneficiary of this trust contest the validity of this trust or any provision thereof or attempt to prevent any provision thereof from being carried out in accordance with its terms in legal proceedings or otherwise, then any interest provided herein for such beneficiary and his or her descendents in this trust is revoked and such beneficiary and his or her descendents shall be deemed to have predeceased me for all purposes under this trust.

Despite the existence of these provisions, two of Testator's children, Mim and Scott, each filed lawsuits alleging that the will and trust documents were procured by undue influence. After extensive discovery was conducted, the trial court granted summary judgment in favor of the defendants. This Court affirmed.

After remittitur was issued, defendants moved for summary judgment seeking to enforce the no-contest clauses. After a hearing, the trial judge found that Mim and Scott "had sufficient evidence to support their reasonable belief" that Testator had been unduly influenced. In support of this ruling, the court cited the strife and discord in the family, particularly between Mim and her children, the Williams Children. The court also noted that Mim and Scott were treated less advantageously under the estate plan than they believed Testator had intended.[5] Accordingly, the judge granted summary judgment in favor of Mim and Scott, finding that they had probable cause to challenge the estate plan. As a result, the judge ruled that the no-contest clauses were invalid and unenforceable.

■ Summary judgment is appropriate when there is no genuine issue of material fact such that the moving party must prevail as a matter of law. Rule 56(c), SCRCP. When reviewing a grant of summary judgment, the appellate court applies the same standard applied by the trial court. *Fleming v. Rose*, 350 S.C. 488, 493, 567 S.E.2d 857, 860 (2002). The evidence and all reasonable inferences must be viewed in the light most favorable to the non-moving party. *Id.* at 493–94, 567 S.E.2d at 860.

■ Viewing the evidence in the light most favorable to Mim and Scott, we hold that summary judgment was improperly granted. Mim and Scott did not have probable cause to bring the underlying actions. Family discord and strife, coupled with a less-than-favorable inheritance, do not constitute probable cause. Moreover, the fact that Testator did not announce that the Williams Children would share in the estate is not reason to believe he was unduly influenced to favor them.

---

5. Testator's estate totaled approximately $33,000,000. Upon Mrs. Russell's death, Scott was to receive $750,000 in trust for life. Testator's other sons, Donnie and Johnny, were each to receive a one-third share of the remaining balance. Mim, however, was to *share* the remaining one-third of the balance *equally* with her children, the Williams Children, in trust for life. The estate plan also directed that upon Mim's death, funds remaining in her trust would pass to the Williams Children.

Any suspicions Mim and Scott may have had about the influence of others over Testator should have been dispelled by the overwhelming evidence of Testator's abilities. Unlike the testator in *Ryan*, Testator maintained his physical and mental health up until his death. He continued to serve as a federal judge, driving himself to and from work. He was fully capable of executing testamentary documents. He maintained his independence, was freely permitted to come and go from his home and office as he desired, having opportunities to visit relatives, friends, and business associates without supervision.

Therefore, because we find that Mim and Scott lacked probable cause to contest the estate plan, we reverse the trial court's order granting summary judgment. Consequently, we find that the no-contest clauses in both the will and trust are valid and enforceable. To hold otherwise would undermine Testator's intent. *See Matter of Clark*, 308 S.C. 328, 417 S.E.2d 856 (1992) (explaining that the cardinal rule for interpreting and construing a will is the determination of the testator's intent).

There is evidence throughout the record that Testator anticipated that certain beneficiaries would contest the validity of his estate plan. He told his attorney and his son, Donnie, that he anticipated a challenge. He asked one of his former law clerks to represent the Williams Children in the event a challenge was brought. He even went so far as to have himself examined by a psychiatrist to create a record of his testamentary capacity. And most importantly, he amended his will and revocable trust to include language explicitly providing that beneficiaries who contested the validity of the estate plan would have their interest revoked and "shall be deemed to have predeceased [him]." [6] In sum, he did all that he could have to ensure that his wishes would be respected.

---

6. Because the no-contest clauses at issue in this case provided that, in the event of a dispute, one's interest would be given over to another, the clauses were not merely *in terrorem* but were also intended to effect a forfeiture. *See Mallet v. Smith*, 27 S.C. Eq. (3 Rich. Eq.) 12 (1853) (explaining that when a clause merely states that beneficiaries shall not dispute the terms of a will, the clause is considered *in terrorem*, and forfeiture will *not* result; but when a clause also provides for the giving over of one's interest in the event of a dispute, then a forfeiture *will* result).

If a no-contest clause cannot be upheld under these facts, such a clause would not ever be enforceable.

Therefore, by giving the no-contest clauses their full, intended effect, we honor Testator's wishes.

## II. Sanctions Against Mim

█ The trial court found that Mim improperly continued the litigation of this case, even after she realized that the facts did not support her claims. Consequently, the court ordered Mim to pay certain attorney's fees and costs incurred from the point in the litigation that she should have realized the lawsuit was frivolous. We agree with the imposition of sanctions.[7]

Sanctions were imposed pursuant to the South Carolina Frivolous Civil Proceedings Sanctions Act (FCPSA)[8] and Rule 11 of the South Carolina Rules of Civil Procedure (SCRCP).

The FCPSA provides:

Any person who takes part in the procurement, initiation, *continuation,* or defense of any civil proceeding is subject to being assessed for payment of all or a portion of the attorney's fees and court costs of the other party if:

(1) he does so primarily for a purpose other than that of securing the proper discovery, joinder of parties, or adjudication of the claim upon which the proceedings are based; and

(2) the proceedings have terminated in favor of the person seeking an assessment of the fees and costs.

S.C.Code Ann. § 15–36–10 (Supp.2002) (emphasis added). A party continues litigation with a proper purpose if he "reasonably believes in the facts upon which his claim is based and ... relies upon the advice of counsel, sought in good faith and given after full disclosure of all facts within his knowledge...." S.C.Code Ann. § 15–36–20 (Supp.2002). When re-

---

7. We have held that the litigation was initiated without probable cause. However, we award attorneys' fees and costs only for the period requested.

8. We recognize that the General Assembly recently amended or repealed various sections of this Act. S.C.Code Ann. § 15–36–10 (Supp. 2005). Nonetheless, we apply the law as it existed at the time judgment was entered.

viewing a trial court's decision to impose sanctions under the FCPSA, this Court takes its own view of the evidence. *Father v. S.C. Dep't of Soc. Services*, 353 S.C. 254, 260, 578 S.E.2d 11, 14 (2003).

After the complaints in the present case were filed, defendants submitted the following information to the plaintiffs and to the court: (1) an affidavit from Testator's attorney, who drafted the will and trust documents; (2) affidavits from Testator's colleagues on the Fourth Circuit; (3) an affidavit from one of Testator's personal friends, a former Chief Justice of the South Carolina Supreme Court; (4) an affidavit from Testator's personal physician; and (5) copies of all of Testator's estate documents, dating back until the late 1950s.

The affidavit of Testator's attorney established that Testator's final will and trust documents reflected Testator's desires. The attorney described Testator as "competent, alert, and capable of making independent decisions." The attorney also stated that Testator "was aware of the extent and nature of his property, maintained control over his property and understood in detail his business affairs...." Affidavits from Testator's colleagues and friends confirmed that Testator maintained both his independence and intellect up until his death. Testator's physician, who observed Testator six weeks before his death, described Testator as "independent and clear thinking, showing no signs of mental incapacity." Moreover, he stated that Testator "never complained ... that he was mistreated by any person" and never showed signs of physical abuse. Finally, documents produced from Wachovia's files revealed that over the course of four decades, Testator had never treated his children equally in his estate plans.

The trial court ruled that, based on this information, Mim should not have continued the litigation. We agree. The affidavit from Testator's attorney made it clear that the estate plan represented Testator's wishes. Other affidavits confirmed that Testator was fully capable of thinking for himself and executing his testamentary documents as he desired. Mim's argument that she continued the litigation on the advice of counsel is without merit because subsequent discovery revealed that she was not entirely honest with her attorneys. Therefore, we hold that the trial court properly imposed sanctions pursuant to the FCPSA.

■ Mim was also sanctioned pursuant to Rule 11, SCRCP, for submitting an affidavit that the trial court later described as "false." We agree with the trial court's assessment of the affidavit and therefore hold that the court properly imposed sanctions pursuant to Rule 11, SCRCP. Rule 11(a) provides, in part, as follows:

> The signature of an attorney or party [on a pleading, motion, or other paper] constitutes a certificate by him that he has read the pleading, motion or other paper; that to the best of his knowledge, information and belief there is good ground to support it; and that it is not interposed for delay.
> . . .
> If a pleading, motion, or other paper is signed in violation of this Rule, the court, upon motion or upon its own initiative, may impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion or other paper, including a reasonable attorney's fee.

On appeal, the imposition of sanctions pursuant to this rule will not be disturbed absent an abuse of discretion. *Runyon v. Wright,* 322 S.C. 15, 19, 471 S.E.2d 160, 162 (1996). "An abuse of discretion may be found if the conclusions reached by the court are without reasonable factual support." *Id.*

We hold that the trial court properly awarded sanctions pursuant to Rule 11. Mim's own deposition testimony directly contradicts statements made in her affidavit. In the affidavit, Mim stated that Testator "always promised and intended to treat his children equally with regards [sic] to his estate." She also stated that the Williams Children prevented her from seeing Testator. Finally, she attested that the Williams Children had been violent and abusive toward Testator.

Each of these statements was later contradicted in Mim's deposition testimony, demonstrating that the affidavit she signed and submitted to the court was not based on knowledge, information, or belief that there were grounds to support it. Accordingly, we hold that the trial court did not abuse its discretion in ordering Mim to pay reasonable attorney's fees and costs from the time defendants' summary judgment

motion was first argued, until the time when summary judgment was granted.[9]

Therefore, we affirm the trial court's imposition of sanctions against Mim.

### III. The Williams Children

Like the other defendants, the Williams Children moved for sanctions pursuant to the FCPSA and Rule 11. But the court ruled that the Williams Children's motion was filed too late. We disagree.

Generally, a trial judge loses jurisdiction [10] over a case when the time to file post-trial motions has elapsed. *Ex parte Beard*, 359 S.C. 351, 358, 597 S.E.2d 835, 838 (Ct.App. 2004). An order is not final until it is entered by the clerk of court; and until the order or judgment is entered by the clerk of court, the judge retains control of the case. *Upchurch v. Upchurch*, 367 S.C. 16, 22, 624 S.E.2d 643, 646 (2006). As a result, a motion for sanctions must be filed within ten days of the notice of entry of judgment. *Pitman v. Republic Leasing Co., Inc.*, 351 S.C. 429, 432, 570 S.E.2d 187, 189 (Ct.App. 2002).[11]

---

9. Because we hold that Mim (and Scott) lacked probable cause *from the outset* to bring the underlying actions, we would support an award of reasonable attorney's fees and costs spanning the entire litigation of this case. But since we have been asked only whether the trial court properly awarded fees and costs measured from the time summary judgment was first argued until the time it was granted, we affirm the amount awarded, limited as it may be.

10. Jurisdiction refers to the trial court's authority to retain jurisdiction over the case, not the court's subject matter jurisdiction. *See Ex parte Beard*, 359 S.C. at 358, 597 S.E.2d 835. (explaining that the ten day rule is a time limitation on the court's ability to retain the case not the power of the trial court to hear cases of that nature).

11. We do distinguish between the FCPSA and the Rule 11 sanctions. There is no requirement that a motion for sanctions made pursuant to Rule 11 be made within ten days from notice of entry of judgment. *See Ex parte Beard*, 359 S.C. at 359–60, 597 S.E.2d at 839 (holding that a motion for sanctions pursuant to the FCPSA must be filed within ten days of notice of entry of judgment but not a motion under Rule 11). As a result, we decline to address what time limit is proper with regard to the Rule 11 sanctions because the issue is not before us. However, since the motion made pursuant the FCPSA is proper it is only logical

In the present case, the trial judge signed the order granting summary judgment on April 27, 2001. That same day, the trial judge faxed a letter to all attorneys, including the Williams Children's attorneys, notifying them that the order was being filed that day. In addition, the clerk of court file-stamped the judgment sheet on April 27, indicating that the order was filed that day. However, judgment was not entered by the clerk until May 8, 2001.

The Williams Children filed their motion for sanctions on May 14, 2001, which is within the ten day time limit. Therefore, the trial court erred in finding that it lacked jurisdiction to consider the motion. Accordingly, the issue of sanctions pursuant to the FCPSA and Rule 11 should be remanded to the trial court.

## CONCLUSION

Because Mim and Scott did not have probable cause to contest the estate plan, we reverse the trial court's decision granting summary judgment in their favor. We also hold that the trial court properly imposed sanctions against Mim. However, we hold that the trial court erred in declining to address the issue of sanctions sought by the Williams Children. Therefore, the issue of sanctions is remanded to the trial court for a decision on its merits.

MOORE, WALLER, PLEICONES, JJ., and Acting Justice Perry M. Buckner, concur.

---

that the Rule 11 motion was timely according to *Ex parte Beard. See The Father v. South Carolina Dep't of Soc. Servs.,* 345 S.C. 57, 72, 545 S.E.2d 523, 531 (Ct.App.2001) (stating that criteria for Rule 11 sanctions are essentially the same as those for sanctions under the FCPSA).